No. 2015-1853

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CLASSCO, INC.,

*Appellant,*

v.

APPLE, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board Reexamination Control No. 95/002,109

## BRIEF FOR APPELLEE APPLE INC.

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  202.887.1500

DAVID L. FEHRMAN
MEHRAN ARJOMAND
ALEX S. YAP
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
Telephone:  213.892.5200
DFehrman@mofo.com

*Counsel for Appellee Apple Inc.*

DECEMBER 21, 2015

## CERTIFICATE OF INTEREST

Counsel for appellee Apple Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

Apple Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by me are:

N/A

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:

Morrison & Foerster LLP:  David L. Fehrman, Vincent J. Belusko, Bita Rahebi, Mehran Arjomand, Brian R. Matsui, Alex S. Yap


Dated:  December 21, 2015                          _____ /s/ David L. Fehrman _____

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................... i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF RELATED CASES ............................................... viii

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE..................................................................4

    A.    The '695 Patent ...........................................................................4

    B.    The Prior Art ...............................................................................8

            1.    Fujioka discloses a caller ID system that provides vocalized announcement of the caller's identity ........................9

            2.    Gulick discloses a hands-free telephone system......................10

            3.    Marui discloses an automobile speakerphone system that provides vocalized announcements of caller identity information.................................................................................13

            4.    Iwaya discloses a telephone system that provides vocalized announcements of caller identity information..........14

    C.    Proceedings Before The Patent Office ...............................15

            1.    The Examiner's decision.........................................................16

            2.    The Board's decision ..............................................................19

SUMMARY OF ARGUMENT ...............................................................22

STANDARD OF REVIEW .....................................................................24

ARGUMENT .........................................................................................26

THE BOARD CORRECTLY FOUND THAT CLAIMS 2 AND 14 ARE UNPATENTABLE BASED ON FUJIOKA IN VIEW OF GULICK..........26

A.    ClassCo's Arguments As To The Combination Of Fujioka And
      Gulick Ignore The Facts Of This Case................................................26

      1.    The Board's finding that Fujioka and Gulick disclosed all
            the elements of the claimed invention is well supported
            by substantial evidence ............................................................26

      2.    ClassCo's unpredictability argument based on purported
            technical difficulties in combining Fujioka and Gulick
            ignores the substantial evidence in this case.............................30

B.    ClassCo's Reading Of *KSR* Would Impose Strict Requirements
      On When A Patent Could Be Found Obvious ....................................37

      1.    ClassCo's rigid "same function" argument has no support
            in KSR or this Court's precedent ...............................................37

      2.    KSR does not require the detailed identification of a
            motivation to combine or the problem to be solved by the
            patent .........................................................................................45

C.    The Board Correctly Found That Claim 14 Would Have Been
      Obvious    Because    Fujioka    Discloses    That    "Identity
      Information"   May   Be   Associated   With   Plural   Caller
      Identification Data..............................................................................46

      1.    ClassCo's proposed construction impermissibly adds
            storage limitations to all its claims and makes claim 2
            superfluous .................................................................................48

      2.    Claim 14 is unpatentable based on Fujioka in view of
            Gulick..........................................................................................50

D.    ClassCo's Secondary Considerations Evidence Is Uncompelling
      And Has No Nexus To Its Claims.......................................................52

      1.    The Board correctly found no industry praise or long-felt
            but unmet need ...........................................................................52

2.    The Board correctly found no nexus between claims 2 and 14 and ClassCo's evidence of secondary considerations..........................................................................54

CONCLUSION ........................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .......................................................33

*Alcon Research, Ltd. v. Apotex Inc.*,
687 F.3d 1362 (Fed. Cir. 2012) .......................................................46

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
381 F.3d 1371 (Fed. Cir. 2004) .......................................................43

*CardSoft, LLC v. VeriFone, Inc.*,
__ F.3d __, 2015 WL 7755661 (Fed. Cir. Dec. 2, 2015) ...................53

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) .........................................................49

*CFMT, Inc. v. Yieldup Int'l. Corp.*,
349 F.3d 1333 (Fed. Cir. 2003) .......................................................44

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
725 F.3d 1341 (Fed. Cir. 2013) .......................................................43

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
851 F.2d 1387 (Fed. Cir. 1988) .......................................................54

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
214 F.3d 1302 (Fed. Cir. 2000) .......................................................49

*In re Constr. Equip. Co.*,
665 F.3d 1254 (Fed. Cir. 2011) .......................................................25

*In re Edge*,
359 F.2d 896 (C.C.P.A. 1966) .........................................................44

*In re Huston*,
308 F.3d 1267 (Fed. Cir. 2002) .......................................................25

*In re Kao*,
639 F.3d 1057 (Fed. Cir. 2011) ...................................................54, 55

*In re Kumar*,
  418 F.3d 1361 (Fed. Cir. 2005) ...........................................................25

*In re Mouttet*,
  686 F.3d 1322 (Fed. Cir. 2012) .......................................24, 25, 32, 42

*In re Rambus*,
  753 F.3d 1253 (Fed. Cir. 2014) ...........................................................25

*In re Royka*,
  490 F.2d 981 (C.C.P.A. 1974) .............................................................44

*In re Scott*,
  323 F.2d 1016 (C.C.P.A. 1963) ...........................................................44

*Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*,
  738 F.3d 1337 (Fed. Cir. 2013) ...........................................................43

*K/S HIMPP v. Hear-Wear Technologies, LLC*,
  751 F.3d 1362 (Fed. Cir. 2014) ...........................................................42

*KSR International Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)...................................... 3, 23, 26, 29, 38, 39, 45, 46

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
  __ F.3d __, 2015 WL 7755665 (Fed. Cir. Dec. 2, 2015) .............................41, 42

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006) ...................................................55, 56

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...........................................................25

*Rambus Inc. v. Rea*,
  731 F.3d 1248 (Fed. Cir. 2013) ...................................................25, 54

*Randall Mfg. v. Rea*,
  733 F.3d 1355 (Fed. Cir. 2013) .......................................26, 29, 39, 45

*Smith & Nephew, Inc. v. Rea*,
  721 F.3d 1371 (Fed. Cir. 2013) ...................................................36, 37

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ....................................................................53, 55

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011) .........................................................................43

*Tokai Corp. v. Easton Enters., Inc.*,
  632 F.3d 1358 (Fed. Cir. 2011) .........................................................................56

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010) ..................................................25, 39, 40, 41, 42

## STATEMENT OF RELATED CASES

This is an appeal from the final decision of the Patent Trial and Appeal Board ("Board") in the *inter partes* reexamination of U.S. Patent No. 6,970,695 C1 ("'695 patent") affirming the Examiner's decision to reject claims 2-5, 7, 9, 10, 14, 17, 18, 23, 26-30, and 34.  No appeal from this proceeding has previously been before this Court or any other appellate court.

This Court's decision will directly affect the following cases:  *ClassCo Inc. v. Kyocera International, Inc.*, No. 1:10-cv-12282 (D. Mass.), and *ClassCo Inc. v. Apple, Inc.*, No. 1:11-cv-06241 (N.D. Ill.).  In that litigation, patent owner and appellant ClassCo, Inc. has asserted the '695 patent against appellee Apple Inc. and other defendants.  Counsel is aware of no other pending case that will affect or be affected directly by this Court's decision.

**INTRODUCTION**

The Board's decision that the claims at issue in this case are unpatentable is amply supported by substantial evidence, and all of ClassCo's efforts to have this Court second-guess that highly fact-bound determination fail. As the Board correctly found, there is nothing inventive about the claims of the '695 patent.

The claims describe little more than a caller identification system with an announcement function. In the apparatus of claim 1, a user can associate incoming caller identification data (e.g., a telephone number) with "identity information" (e.g., a name). When an incoming call is received, the apparatus announces the name associated with the telephone number over the same speaker used to have a conversation. The apparatus of claim 1 was found unpatentable in a prior *ex parte* reexamination, and was cancelled. At issue in this appeal are claims 2 and 14, which both depend directly from claim 1. Neither adds much. Claim 2 recites memory for storing names. Claim 14 states that the identity information set forth in claim 1 is associated with more than one phone number. All other appealed claims stand or fall with claim 2.

Not surprisingly, all the elements in claims 2 and 14 were disclosed in the prior art. Indeed, as the Board's factual findings show, a single prior art reference disclosed *all* the claim limitations except one: using the same speaker both to announce the incoming caller's name and to have a telephone conversation. The

Board found that a prior art caller identification device (Fujioka) stored a name associated with caller identification data and announced the name over a speaker when an incoming call was received, just like here. Yet unlike the claims at issue, Fujioka used a different speaker (the one in its handset) for the telephone conversation.

But that difference is not enough to make ClassCo's claims patentable. The Board found that the claims were met simply by adding a conventional speakerphone feature to Fujioka. A prior art speakerphone system (Gulick), like many speakerphones, used the *same* speaker to produce both ring tones (to announce an incoming call) and voice audio (for a telephone conversation). Based on these findings, the Board concluded that the combination of Fujioka's caller identification device and Gulick's hands-free phone would predictably yield the claimed invention—a single speaker that could be used for both name announcement and a telephone conversation. After all, a person of ordinary skill in the art would view it as self-evident that Fujioka could be improved by including ubiquitous hands-free speakerphone capabilities, like those disclosed in Gulick.

ClassCo makes little effort to show that these straightforward findings were not supported by substantial evidence. ClassCo instead contends that a person of ordinary skill in the art would have faced numerous technical difficulties in adding Gulick's hands-free operation to Fujioka. According to ClassCo, a skilled artisan

2

would use two entirely different speakers—one for hands-free conversations and another one for voice announcements. But the Board correctly rejected that argument. It found that two is not better than one. Substantial evidence showed that a caller identification system like Fujioka could obviously include hands-free speakerphone capability in view of Gulick and that a person of ordinary skill would (not surprisingly) prefer one speaker rather than two in order to reduce the "cost and size" of the device.

ClassCo's arguments fare no better as to the law. In misreliance on *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), ClassCo argues that a combination of prior art references is obvious only if it satisfies a rigid "same function" test of ClassCo's own creation. ClassCo appears to contend that, for a claim to be obvious, each prior art element must be incorporated into the combination exactly as it is—without *any* ingenuity or creative steps that a skilled artisan might employ. This argument conflicts with the very authority on which ClassCo purports to rely: the Court in *KSR* emphasized that a "person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 421.

Finally, ClassCo argues that secondary considerations require reversal of the Board's obviousness determination. But ClassCo again ignores the substantial evidence supporting the Board's decision. The Board made extensive findings that ClassCo's evidence was either insufficient or lacked a nexus to its claims. As to

the former, ClassCo fails even to argue how the Board's findings are incorrect. And as to the latter, ClassCo fails to address the fundamental defect in its secondary considerations argument:  how its evidence relates at all to features not already disclosed in the prior art.

The Board's decision should be affirmed.

## STATEMENT OF THE CASE

### A.    The '695 Patent

The '695 patent describes a telephone system that provides identity information, e.g., the name of a calling party, in response to the receipt of caller identification data, commonly known as caller ID.  The apparatus announces the caller's name through a speaker—rather than just displaying it on a screen. Claim 1 requires the use of a single speaker both to announce the caller's name and to have a telephone conversation.

Claim 1 provides:

> 1.    A caller announcement apparatus for a telephone system that provisions a telephone call between a caller telephone at a caller station and a called telephone at a called station, where the caller station is associated with an identity, where the telephone system provides signals to the called station that include caller identification signals representative of the identity associated with the caller station and voice signals representative of audio detected by an audio transducer of the caller telephone, and where the voice signals are processed by the called telephone to produce audio using an audio transducer at

the called station, the caller announcement apparatus comprising:

a signal receiver at the called station operatively connected to the telephone system to receive signals therefrom, the signal receiver being operative to extract caller identification signals from the signals received from the telephone system and to provide caller identification data corresponding to the extracted caller identification signals;

a processing unit operatively connected to the signal receiver to receive caller identification data therefrom, the processing unit being operative to provide identity information associated with the caller identification data;

an audio announcing circuit operatively connected to the processing unit to receive identity information therefrom, the audio announcing circuit being operative to use the identity information to produce audio using the audio transducer at the called station.

Appx28 (claim 1).

Claim 1 was found unpatentable and cancelled in an earlier *ex parte* reexamination, control no. 90/011,679.  Appx30-31.  Only two claims directly depending from the cancelled claim are at issue in this appeal:  claim 2 and claim 14.  All of ClassCo's other appealed claims stand or fall with claim 2. ClassCo Br. 2.[1]

---

[1] *I.e.*, claims 3-5, 7, 9, 10, 17, 18, 23, 26-30, and 34.

Claim 2 adds the following limitation to claim 1: "the processing unit comprises memory storage for storing identity information associated with the caller identification data." Appx28 (col.9:39-42). ClassCo does not dispute that this limitation was disclosed in the prior art. ClassCo Br. 30. The only limitation of claim 2 at issue in this appeal, therefore, is contained in parent claim 1: using the same speaker or "audio transducer" for both caller voice signals and the announcement of identity information.

Claim 14 adds the following limitation to claim 1: "the identity information is associated with plural items of caller identification data." Appx28 (col.10:25-27). Claim 14 does not depend from claim 2. It therefore does *not* contain any limitation that identity information be stored. Instead, claim 14 requires only that identity information be *provided* and *used* to produce audio (per claim 1) and be associated with plural items of caller identification data.

Highlighted FIG. 1 below illustrates an embodiment of the system:



FIG. 1

Appx18 (FIG. 1) (highlighting added).  The system includes an audio announce circuit **30**, a microcontroller **26**, and a names database **54**.  The names database **54** stores audio recordings, e.g., names, to be associated with different caller ID data, e.g., telephone numbers.  If the database **54** contains a name that corresponds to an incoming telephone number, the microcontroller **26** directs the audio announce circuit **30** to provide a signal to a loop current source **40**, which amplifies the audio signal for playing the caller's identity into a relay **38** for announcement over one or more telephone sets attached at point **14**.  Appx26-27 (col.6:51-53; col.7:36-54).  Because speaker **32** is not used for voice communication during a call, it has no relevance to the claims at issue here.

In several places in its brief, ClassCo highlights a feature of its commercial product that is not recited in either claim 2 or claim 14:  the ability to hear caller ID

7

information over a standard telephone handset without answering the call.  *E.g.*, ClassCo Br. 3-4, 7, 18.  This unclaimed feature provides no basis for patentability.

## B.    The Prior Art

In the early 1980s (many years before the '695 patent), caller ID systems were developed to make telephone numbers or data representing telephone numbers available to a called party before the call was answered.   Many specialized telephones and separate caller ID devices could provide this information.   *See* Appx24 (col.1:25-col.2:8).   On these devices, the caller ID information could be shown on a visual display or provided by vocalized announcement, just like the claims at issue here.  Appx24 (col.1:25-col.2:8).  Thus, when a third party called, the third party's telephone number (and possibly other information) was shown on the telephone or caller ID device's display or was announced on a speaker.

During this same time period, hands-free speakerphones also were well known in the art.  Appx1294 (col.1:15-19).  As the name indicates, a speaker is used for calls instead of the handset.  Unlike a handset, the speaker of a hands-free phone could provide both ring sounds to announce an incoming call and voice audio for the telephone conversation.

1.    *Fujioka discloses a caller ID system that provides vocalized announcement of the caller's identity*

U.S. Patent No. 4,894,861 to Fujioka issued in 1990 and discloses a caller ID system that announces the name of the caller. In Fujioka, the disclosed caller ID system can store names associated with telephone numbers. Thus, a user can store the caller ID information that corresponds to certain callers. For example, the user can store the name "Mom" and associate it with her telephone number. When the system identifies an incoming call as coming from that number, the word "Mom" will be output by a speech generator. Appx1256-57 (col.1:34-60; col.3:7-33).

An embodiment of Fujioka's system is illustrated in Fig. 2, reproduced below:



Fig. 2

Appx1254 (highlighting added). ID information such as names is stored in memory **15** along with corresponding telephone numbers. Appx1257 (col.3:24-28). For each incoming call, the central processing unit **14** determines whether the incoming telephone number corresponds with a preregistered number stored in memory **15**. Appx1257 (col.4:18-25). If there is a match, the speech generator **16** responds to commands from the central processing unit **14** to generate a vocalized announcement (e.g., the stored caller's name). Appx1257 (col.4:33-39). The announcement is provided through a speaker **6**, which is separate from the telephone handset **4**. Appx1257 (col.4:33-39).

### 2. *Gulick discloses a hands-free telephone system*

U.S. Patent No. 5,199,064 to Gulick et al. issued in 1993 and discloses a hands-free telephone system in which a speakerphone is used both for ring tones and telephone conversation. In Gulick, a single speaker in the hands-free telephone unit plays both the ring tones indicating that there is a call and the caller's voice audio after the telephone is answered.

FIG. 1 of Gulick illustrates the disclosed telephone system incorporating this speakerphone. A telephone unit **12** is connected to a microphone **28** and speaker **30,** which may be contained in the same housing as the telephone unit **12**. Appx1295 (col.3:4-9).

10



FIG.1

Appx1286 (highlighting added).   FIG. 2 shows the telephone unit **12** in greater

detail.  Appx1296 (col.5:9-10).



FIG. 2

Appx1287 (highlighting added). The telephone unit contains an audio processor **42**, which "includes a CODEC transmitter **80**, a CODEC receiver **82,** a hands-free controller **84,** a variable gain amplifier **86**, a fixed gain amplifier **88**, a voltage reference **90**, and a loudspeaker drive **92**." Appx1297 (col.8:55-60). The CODEC receiver **82** receives digital signals that represent a caller's speech and converts the signals to analog form. Appx1298 (col.9:13-20). The CODEC receiver **82** is coupled to the loudspeaker drive **92**, and "[t]he loudspeaker drive **92** is adapted to be coupled to the external speaker **30** (FIG. 1) for reproducing the received [human speech]." Appx1298 (col.9:20-26).

In addition to reproducing received voice signals, the speaker **30** also provides ring tones. "The tone ringer **46** is coupled to the CODEC receiver **82**. The tone ringer provides ring tones in digital format which are also converted to analog form by the CODEC receiver. The analog voltages representative of the ring tones are then conveyed to the loudspeaker drive **92** for reproduction by the external speaker [**30**] coupled to the loudspeaker drive **92**." Appx1298 (col.9:27-33).

Gulick thus teaches that a single speaker can be used to provide both caller voice audio and ringer sounds to announce an incoming call.

12

### 3. *Marui discloses an automobile speakerphone system that provides vocalized announcements of caller identity information*

Other prior art telephone speakers also were used to provide more than one type of sound. U.S. Patent No. 4,998,291 to Marui et al. issued in 1991 and is directed to a mobile telephone, such as a hands-free unit used in a car. Appx1277 (col.3:56-61).[2] Marui discloses a caller ID system that announces the caller's pre-recorded name over a speaker before the call is answered and then uses that same speaker for the telephone conversation. An embodiment is illustrated in FIG. 1, reproduced below:



FIG. I.

Appx1261 (highlighting added).

--------

[2] Although the Board did not address the rejections based upon Marui or Iwaya (discussed below), they are part of the evidence of record.

In Marui, identity information of a caller is played over the speaker of a hands-free telephone in a car. *See* Appx1282-83 (col.14:60-15:10). When placing a call, he caller is prompted to provide an ID code or a password. The speaker **492** plays a prerecorded voice message corresponding to the ID code or password to alert the called party of the caller's identity. Appx1282 (col.14:45-68). If the called party answers the call and elects to use the hands-free mode, the same speaker **492** is used to present the caller's voice. Appx1282 (col.14:13-15, 45-68); Appx2016 (Dr. Sprang, Apple's expert).

Marui also discloses that the speaker **492** is used to produce ring tones. Appx1282 (col.13:62-63). Thus, the same speaker **492** is used for hands-free telephone communication, ring tones, and announcing a caller by corresponding recorded caller identification information.

### 4. *Iwaya discloses a telephone system that provides vocalized announcements of caller identity information*

As another example, Japanese Unexamined Patent Application Publication H2-177648 to Iwaya was published in 1990 and discloses a telephone system that announces a caller's name based on caller ID information. Appx1324. The system is illustrated in the figure below:



Appx1326 (highlighting added). Caller numbers are registered in storage unit **17**, and corresponding caller names are registered in the voice storage unit **18** by speaking into the microphone T of the telephone handset **13**. When there is an incoming call, Iwaya compares the received caller number with the stored numbers, and if there is a match, outputs the stored caller information (e.g., the caller's name) to the speaker **20**. Appx1325-26. If there is no match, the system will use the ring tone oscillator **19** to produce a ring tone through the same speaker **20**.

### C.    Proceedings Before The Patent Office

The '695 patent was initially the subject of an *ex parte* reexamination. That reexamination concluded with sixteen of the thirty-six original claims, including

claim 1, being found unpatentable and cancelled.  Appx43.  Shortly thereafter, Apple requested *inter partes* reexamination.  Appx36.

### 1.    *The Examiner's decision*

After ordering *inter partes* reexamination, the Examiner rejected all claims being reexamined and maintained those rejections throughout the reexamination. Specifically, the Examiner's rejections were based on three grounds:  (1) Fujioka in view of Gulick, (2) Fujioka in view of Marui, and (3) Iwaya in view of Gulick. Appx1078-1110.

*Fujioka/Gulick:*  The Examiner found that Fujioka disclosed all of the claim limitations except outputting identity information through the same speaker that produces voice signals from the caller.  "Fujioka generally discloses outputting identity information (e.g., the caller's name) as an audio signal that announces the call through a separate audio transducer comprising speaker 6."  Appx1081.  As to claim 2, the Examiner found that Fujioka discloses that "the processing unit comprises memory storage for storing identity information associated with the caller identification data."  Appx1082.  Consistent with the reexamination request, the Examiner found that "Fujioka does not specifically disclose outputting this call announcing audio signal with identity information through the same audio transducer that produces the voice signals received at the called station from the caller."  Appx1081-82.

However, the Examiner found that Gulick discloses (1) a system related to the one described by Fujioka that includes a telephone system with a loudspeaker (i.e., speakerphone); and (2) using the same speaker to output a ringing signal announcing an incoming call as well as voice signals from the caller. The Examiner concluded that a person of ordinary skill in the art would have been motivated to combine Fujioka and Gulick in order to advantageously enable the called person to communicate with the caller in a hands-free (speakerphone) manner. Appx1082. Indeed, the Examiner agreed with Apple that the particular advantage of a hands-free speakerphone feature was "self-evident" and that Gulick teaches a solution to the problem of the caller not wanting to use hands during a call. Appx1104-06. The Examiner thus concluded that the combination of these known elements, according to known methods, would yield a predictable result of using the same speaker for ringing, voice signals, and announcing identity information. Appx1081-82.

With respect to claim 14 and its requirement that "identity information is associated with plural items of caller identification data," the Examiner found that in Fujioka the same identity may be associated with different telephone numbers (e.g., one person may have different home and office numbers). The Examiner explained: "Given that Fujioka already discloses storing identity information (e.g., a name) associated with caller identification data (e.g., an incoming number), it

17

would have been obvious to a person of ordinary skill in the art to store the same name for plural numbers in the system described by Fujioka in view of Gulick in order to advantageously store information for callers having more than one phone number." Appx1084.

*Fujioka/Marui:*  The Examiner also found that it would have been obvious to a person of ordinary skill in the art to combine Fujioka and Marui and use the same speaker for caller ID announcement and caller voice signals.

Like Gulick, the Examiner found that Marui discloses a speaker that provides voice signals for communication, ring signals announcing an incoming call, and recorded voice signals to identify a caller.  Because Fujioka already discloses the other claim elements, the Examiner concluded that the combination of these known elements according to known methods would yield a predictable result of using the same telephone speaker for tonal ringing, voice signals, and announcing identity information.  Appx1090.

*Iwaya/Gulick:*  Finally, the Examiner found that Iwaya discloses all the elements of claim 2 except using the same speaker to provide both audible caller ID information and the voice signals from the caller.  Appx1097-98.  As with Fujioka/Gulick, the Examiner found that a person of ordinary skill in the art would have been motivated to combine Iwaya and Gulick in order to advantageously

enable the called person to communicate with the caller in a hands-free (speakerphone) manner.  Appx1097.

*Secondary considerations:*     The Examiner found that the secondary considerations submitted by ClassCo failed to demonstrate non-obviousness, and that they were related to features already disclosed in the prior art.  Appx1109-10.

### 2.     *The Board's decision*

Following an oral hearing, the Board affirmed the Examiner's decision that all appealed claims are unpatentable over Fujioka and Gulick.  Because the Board affirmed that rejection, it found it unnecessary to address the other two rejections based on Fujioka/Marui and Iwaya/Gulick.  Those rejections remain undisturbed.  Appx15.

The Board found that "Fujioka discloses speakers (in a telephone system) that produce audio derived from voice signals and audio derived from identity information" and (relying on the statements of ClassCo's own expert) "based on Gulick, one of ordinary skill in the art would have understood that a speaker in a telephone system may (and does) produce audio derived from multiple types of data in a telephone system, including 'tonal ringing call-alerting' and 'caller voice signals.'"  Appx6.  Based on these disclosures, the Board found that a combination of Fujioka and Gulick would have resulted in no more than the predictable result of

a speaker in the telephone system that produces any of voice signals, identity information, or tonal ringing call-alerting.  Appx6-8.

The Board also found that ClassCo's argument that it is "not necessary" to use the same speaker—as opposed to multiple speakers—for identity information and caller voice signals failed.  The Board explained:  "the inquiry is whether it would have been *obvious* to one of ordinary skill in the art and not whether it would have been *necessary* to one of ordinary skill in the art to have combined the teachings of Fujioka and Gulick."  Appx7.

The Board likewise rejected ClassCo's apparent argument that it would not have been obvious to one of ordinary skill in the art to have bodily incorporated Gulick into Fujioka.  The Board explained that there is no such test for obviousness.  Appx8.  "Rather, the test is what the combined teachings of those references would have suggested to those of ordinary skill in the art."  Appx8-9.

Regarding claim 14, the Board stated: "[w]e agree with the Examiner that Fujioka, for example, discloses 'identity information.'"  Appx9.  The Board noted that "Fujioka discloses that 'the central processing unit derives the calling party's name . . . corresponding to the originating subscriber's number in the memory 15.'"  Appx9.  Based on that, the Board found that ClassCo "does not explain sufficiently how the 'calling party's name,' for example, differs from the claimed

'identity information.'  In both cases, the information indicates an 'identity' (e.g., a name)."  Appx9.

Finally, the Board considered ClassCo's evidence of secondary considerations but found it unpersuasive.  The Board found that ClassCo's evidence of "praise" was nothing more than objective statements of the alleged features of the phone system.  Appx9-10.  The Board further found that ClassCo's alleged "praise" stemmed from what was known in the art and was not sufficiently related to any of the stated features in the claims.  Appx12.

In addition, the Board found that ClassCo provided insufficient evidence to demonstrate that there was a long-felt but unmet need in the industry.  Appx13.  In particular, the Board found that ClassCo failed to demonstrate that customers were "highly satisfied" and did not show that its customer satisfaction was indicative of a long-felt but unmet need in the industry.  Appx13.

The Board also found that ClassCo's evidence of alleged commercial success was related only to features already disclosed in the prior art (i.e., audible announcement based on Caller ID).  Thus, the Board found that ClassCo had failed to demonstrate a sufficient nexus between its alleged commercial success and the claimed invention.  Nor did the Board credit ClassCo's evidence that the limitations of claims 2 and 14 were the primary reasons for the licenses ClassCo provided.  Appx14-15.

21

## SUMMARY OF ARGUMENT

**A.**    Claims 2 and 14 of the '695 patent are unpatentable.  The Board correctly found that all the limitations of claims 2 and 14 were disclosed in the prior art.  Fujioka discloses all the elements except one.  It teaches a caller ID apparatus that receives caller identification data (a caller's telephone number) and announces corresponding identity information (the caller's name) through a speaker.  The only claim limitation that Fujioka does not disclose is use of the same speaker for caller announcement and a telephone conversation.  But Gulick teaches the missing limitation:  a speaker in a speakerphone that outputs both an announcement (a ringing alert) and a telephone conversation.  As the Board correctly found, providing hands-free capability to Fujioka would predictably reach the claimed invention—a caller ID device employing a single speaker that outputs both caller identity information and voice signals for telephone conversations.  Using the same speaker instead of two speakers here is the epitome of common sense obviousness.

Substantial evidence supports the Board's findings.  ClassCo ignores this deferential standard of review.  Instead, the crux of ClassCo's argument is that a person of ordinary skill in the art would not and could not use just one speaker to produce sound.  ClassCo posits implausible alternatives and hypothetical obstacles to arriving at the claimed invention.  For example, ClassCo contends that a single

speaker in a Fujioka/Gulick combination would require certain (unclaimed) difficult-to-obtain technical specifications. According to ClassCo, these technical difficulties would dissuade a person of ordinary skill in the art from using one speaker instead of two. But these assertions are belied by the well-known existence of hands-free phones in the prior art which use a single speaker for more than one purpose, such as Gulick and Marui. And Apple's expert put to rest any technical "difficulties" in using one speaker rather than two.

**B.**    In an effort to evade the Board's factual findings, ClassCo rewrites the law. After providing a detailed exposition of *KSR*, ClassCo asserts that the Supreme Court's decision imposed stringent requirements in order for a patent to be found obvious. ClassCo says that a combination is obvious only if it does no more than combine each prior art element *as is*. But *KSR* itself repudiates that type of rigid thinking in favor of an "expansive and flexible approach." Instead, the Board should, as it did here, "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 550 U.S. at 418.

**C.**    With respect to claim 14, ClassCo's argument turns entirely on its mistaken and unreasonable construction of "identity information." The Board and the Examiner gave "identity information" its ordinary and customary meaning: "something that identifies." Yet ClassCo argues that "identity information" has a far more specific meaning here: "a physical item that can only exist in one place at

one time (e.g., a particular section of a particular memory element containing a stored name . . . )." ClassCo's construction cannot be correct. Not only does that construction find no support in the specification; it is repugnant to the claims. Claim 14 depends directly from claim 1, which requires only that identity information be *provided* and then *used.* There is *no* requirement that it be *stored*. Indeed, storage is specifically recited in another claim—claim 2—that separately depends from claim 1. Thus, requiring the identity information in claim 14 to be stored would improperly import a limitation from claim 2 into claim 14. Absent this imported limitation, claim 14 is unpatentable as the Board correctly found.

**D.**    Finally, ClassCo argues that secondary considerations require the Board to be reversed. But the Board made extensive findings that ClassCo's evidence was either insufficient or lacked a nexus to its claims. Notwithstanding these findings, ClassCo makes no effort to show how the Board's findings are incorrect. And while ClassCo asserts that its evidence has a nexus to its alleged invention, it fails to articulate how its evidence relates to features actually recited in its claims or not found in the prior art.

## STANDARD OF REVIEW

This court reviews the Board's factual findings for substantial evidence and reviews the Board's legal conclusions de novo. "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In*

*re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012).  Under the substantial evidence standard, this Court considers all the evidence supporting the Board's findings, not just those portions of the record on which the Board has explicitly relied.  *In re Huston*, 308 F.3d 1267, 1281 n.9 (Fed. Cir. 2002).

For an expired patent such as the '695 Patent, claim construction should be applied pursuant to *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention).  *See In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014).  Obviousness is a question of law based on underlying factual findings.  *In re Kumar*, 418 F.3d 1361, 1365 (Fed. Cir. 2005).  What a particular reference discloses and whether there is a reason to combine references is a question of fact.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010); *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011).  The existence of secondary considerations of non-obviousness is a question of fact.  *Rambus Inc. v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013).

## ARGUMENT

## THE BOARD CORRECTLY FOUND THAT CLAIMS 2 AND 14 ARE UNPATENTABLE BASED ON FUJIOKA IN VIEW OF GULICK

Claims 2 and 14 are unpatentable because the Board correctly found that Fujioka and Gulick disclose all of the claim limitations, there would have been a simple and common sense reason to combine the references, and there was insufficient evidence of objective indicia of non-obviousness.  Because these findings are supported by far more than "a mere scintilla of evidence," there is no basis to overturn the Board's decision.

### A.    ClassCo's Arguments As To The Combination Of Fujioka And Gulick Ignore The Facts Of This Case

#### 1.    *The Board's finding that Fujioka and Gulick disclosed all the elements of the claimed invention is well supported by substantial evidence*

As the Board correctly found, this case involves the straightforward combination of two prior art references.  Where, as here, all the elements of the claimed invention are disclosed in the prior art, the claims are prima facie obvious when the combination of those elements "does no more than yield predictable results."  *KSR*, 550 U.S. at 416; *see Randall Mfg. v. Rea*, 733 F.3d 1355, 1363 (Fed. Cir. 2013) (same).

Claim 1, from which claim 2 depends, recites a caller announcement apparatus that announces who is calling on the same speaker used to have a

26

telephone conversation.  When an incoming call is received, the receiver extracts caller identification data, and the processing unit provides "identity information associated with the caller identification data."  Appx28 (col.9:21-33).  The "audio announcing circuit" then uses the "identity information to produce audio using the audio transducer at the called station"—i.e., the telephone speaker used to have a telephone conversation.  Appx28 (col.9:34-38).  Claim 2 adds the further requirement that the processing unit comprises memory storage for storing identity information associated with that data.  Appx28 (col.9:39-42).

There is nothing inventive about claim 2.  As the Board found, *all* these elements are disclosed in the prior art.  Appx5-6.  And ClassCo has conceded that every limitation but one was disclosed in a single prior art reference:  Fujioka.  ClassCo Br. 30; Appx5-6.  Like ClassCo's claimed device, Fujioka processes caller ID data and announces stored identity information through a speaker.  Appx1257 (col.4:10-39).  As the Board found, "Fujioka discloses speakers (in a telephone system) that produce audio derived from voice signals and audio derived from identity information."  Appx6.  In particular, Fujioka takes caller ID data, matches it to stored identity information, and announces the identity information using a speaker (speaker **6** in Fig. 2 of Fujioka).  Appx1254 (Fig. 2); Appx1257 (col.4:18-39).

The *only* limitation that Fujioka does not disclose is use of the same speaker to announce both caller ID information and caller voice signals (ClassCo Br. 30)— "the audio announcing circuit being operative to use the identity information to produce audio using the audio transducer at the called station" (Appx28 (col.9:36-38)). In Fujioka, the speaker in the earpiece of a conventional handset **4** provides voice audio. Appx1254 (Fig. 2).

But the Board correctly found that the prior art hands-free telephone system of Gulick included a speaker for several purposes. Appx6 (finding that speakerphones could "produce audio derived from multiple types of data within a telephone system"). Substantial evidence supports that finding. As Apple's expert Dr. Sprang explained: "using the speaker in a speakerphone to play both voice audio and ring indication was already well known in the art and speakerphone products that combined the signals on one speaker were already commercially available." Appx2017-18 (Sprang). Gulick discloses one such hands-free speakerphone that could announce both ring tones and caller voice audio. The Board found "that 'Gulick . . . teaches using the same audio transducer to output a ringing signal announcing an incoming call as well as the audio signal received from the caller (column 3, lines 3-16; column 9 lines 27-38)." Appx5 (quoting Appx1081-82); *see* Appx1081-82; Appx2016-17 (Sprang); Appx1777 (Dr. Bress, ClassCo's expert).

28

Combining Fujioka and Gulick would predictably yield the apparatus of claim 2. *Randall Mfg.*, 733 F.3d at 1363; *see KSR*, 550 U.S. at 417 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."). The Board explained that "based on Gulick, one of ordinary skill in the art would have understood that a speaker in a telephone system may (and does) produce audio derived from multiple types of data in a telephone system, including 'tonal ringing call-alerting' and 'caller voice signals.'" Appx6. The combination of Fujioka's caller ID telephone system and Gulick's speakerphone would provide the predictable result "of the use of a speaker in the telephone system that produces audio derived from data in a telephone system, the data being any of voice signals, identity information, or 'tonal ringing call-alerting,' for example." Appx6. In other words, adding the desirable hands-free capability of Gulick to Fujioka's telephone system would advantageously allow a user to have hands-free conversations and receive caller identity announcements. As Gulick's speakerphone uses a single speaker to produce audio from different types of data, it would have been obvious to a skilled artisan to use that speaker "for ring indication, voice call audio, and caller identity announcement rather than adding another speaker that is not required." Appx2018 (Sprang); *see* Appx8.

In addition to being nothing more than a predictable variation of the prior art, there would have been common-sense reasons to combine Fujioka and Gulick.

The Board "agree[d]" with the Examiner that there would have been a reason to combine the prior art references, given what was disclosed by Fujioka and in the prior art.  Appx6; Appx8.  This finding is correct.  As the Examiner found, a skilled artisan would have looked to improve Fujioka's caller ID system by providing hands-free operation (such as in Gulick).  Appx1082; Appx1106.  The Examiner found:  "the particular advantage of a hands-free speakerphone feature is self-evident"; "'Fujioka and Iwaya would be made more desirable by providing hands-free operation'"; and "Marui and Gulick each teach a solution to the problem of the caller not wanting to use hands during a call."  Appx1106-07; *see* Appx1082.

In sum, far more than a "mere scintilla of evidence" supports the Board's findings that all of the elements of claim 2 are disclosed in the combination Fujioka and Gulick, that the combination would predictably yield the claimed invention, and that a skilled artisan would have a reason to make the combination. There is no basis to disturb the Board's findings.

### 2. *ClassCo's unpredictability argument based on purported technical difficulties in combining Fujioka and Gulick ignores the substantial evidence in this case*

Quibbling with the Board's factual findings, ClassCo argues that a person of ordinary skill in the art would have faced significant technical difficulties in combining Fujioka and Gulick.  But ClassCo is simply wrong as to the facts:

substantial evidence shows there would have been no obstacle to combine the prior art. And ClassCo's "technical" argument assumes too much: it assumes that a skilled artisan would only want to create a speaker meeting certain *unclaimed* technical requirements.

ClassCo argues that a person of ordinary skill in the art would not have been able to use (or would have been dissuaded from using) Gulick's teachings to create a speaker that announces caller identification information. ClassCo Br. 40, 42-43, 45-46. For support, ClassCo cites its expert's declaration (Dr. Bress) stating that "the complex technical requirements of speakers and related electrical circuitry" would have made the combination difficult. ClassCo Br. 42. But that is a dubious assertion at best. Both Gulick and Marui disclose hands-free phones using a single speaker for multiple purposes, and substantial evidence shows that there would have been no technical impediment to having a single speaker generate a ring tone, caller identity information, and voice audio for hands-free communication.

As the Board found, a person of ordinary skill in the art would have known that Gulick's disclosed speakerphone could "produce audio derived from multiple types of data within a telephone system (e.g., voice signals or 'tonal ringing call-alerting')." Appx6; *see* Appx2016 (Sprang). There was no reason to believe Gulick's teachings were limited to just two types of audio data. To the contrary, Apple's expert, Dr. Sprang, explained: "A single audio transducer could be easily

31

adapted to play the ring tone, audio identification signal, and audio voice signal . . . ." Appx2018 (Sprang). And a person of ordinary skill in the art would also know that other hands-free speakerphones (Marui, for example) could produce audio from more than two types of data within a telephone system. Appx2029 (Sprang) (citing Appx1282 (col.13:62-63; col.14:13-16, 60-65)). As Apple explained to the Board, ClassCo's argument that a skilled artisan would not expect a single speaker to work fails "with respect to Gulick, because Marui's disclosure of the use of a single speaker for announcement of caller identity and hands-free communication." Appx1922. Thus, Dr. Bress's testimony was far from "uncontested." *Contra* ClassCo Br. 40. And the Board and Examiner had every right to rely on Apple's evidence instead of ClassCo's. *Mouttet*, 686 F.3d at 1331.

ClassCo says that Dr. Sprang's declarations are too conclusory. ClassCo Br. 40-41. Not so: Dr. Sprang's declarations explained that Fujioka and Gulick relate to the common objectives and subject matter of caller announcement. Appx2017. He analyzed the prior art, providing citations to the references. Appx2015-16. He explained that using a common speaker would reduce the number of components in the system and thus reduce both the system cost and retail price, making the product more desirable. Appx2018. And he said that this would be particularly desirable in the market where caller ID devices compete: the cost-conscious consumer electronics market. Appx2018. Dr. Sprang's declaration

shares no similarity to the conclusory testimony in *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012), upon which ClassCo relies.  Unlike here, the testimony in that case was entirely "generic and b[ore] no relation to any specific combination of prior art elements."  *Id.* at 1328.

Nor would it make sense (as ClassCo suggests) to use multiple speakers in a Fujioka/Gulick combination.  *Contra* ClassCo Br. 45-46; Appx1440-42 (Bress). ClassCo's argument is based on Dr. Bress's opinion that multiple speakers would be more efficient "taking cost, size, and practicality into consideration." Appx1443 (Bress); *see* ClassCo Br. 45-46.  The Board rightly rejected that argument too.  Appx8-9.  Common sense (and substantial evidence) dictates that a skilled artisan would use a single speaker:  "using a common audio transducer would enhance commercial opportunities and make the product more desirable by reducing the number of components in the system and therefore both the system cost and retail price."  Appx2018 (Sprang).  Anything more (like Dr. Bress suggested) would be "adding cost and size to the system by adding a second audio transducer that serves no useful purpose."  Appx2018 (Sprang).  The Board (and record) thus showed *how* the "Fujioka/Gulick apparatus—making Fujioka capable

of hands-free speakerphone operation—would have led to the claimed apparatus." *Contra* ClassCo Br. 29.[3]

The '695 patent itself provides perhaps the most telling indication that the technical arguments made by ClassCo are meritless. The specification states that "[t]he invention is compatible with standard telephone sets, including cordless *and speaker telephones*"—i.e., standard speakerphones that existed in the prior art (like Gulick). Appx25 (col.4:18-20) (emphasis added). ClassCo's brief even presents a modified version of FIG. 1 of the '695 patent which includes a speakerphone C. ClassCo Br. 4. This figure is reproduced below:

---

[3] Dr. Bress did not state that a person of ordinary skill in the art would find it "impossible" to combine the features of Fujioka and Gulick using a single speaker. Appx1494 (Bress Ex. 4). Instead, he believed that two speakers would be "better": his declaration states that the prior art did not "suggest[] that using a single loudspeaker would have been in some way *better* than, or even equivalent to, a design with two loudspeakers for audible speech alerting and loudspeaker operation." Appx1494 (Bress Ex. 4) (emphasis added). At most, this simply indicates that it would have been obvious to use *either* a single speaker or two speakers.



FIG. 1

ClassCo Br. 4 (highlighting added). It is immediately apparent that, by taking a call with the speakerphone instead of picking up the handset, the announcement of caller identity information as described in the specification would be made through the speaker of the speakerphone—i.e., the *same* speaker that is used for voice communication. Thus, ClassCo's arguments regarding so-called technical impediments are belied by its own disclosed system.

For all these fact-bound reasons, the Board's skepticism of ClassCo's assertions of unpredictability in speaker technology was well-founded. In light of the record before it, the Board found that ClassCo did "not explain sufficiently how using a speaker that produces audio from different types of data in a telephone system would have been unpredictable or unexpected to one of ordinary skill in the art, particularly in view of such a disclosure by Gulick, for example." Appx8. ClassCo tries to excuse its failure of proof by arguing that the Board "placed the burden on" the patentee. ClassCo Br. 42. But that is not what the Board did. The Board simply considered ClassCo's technical argument and evidence and rejected

them.  While ClassCo may disagree with that finding, it is amply supported by substantial evidence.

ClassCo's technical argument fails for another reason:  the so-called technical obstacles are not based on any claimed features and thus cannot be used to distinguish the prior art. *See Smith & Nephew, Inc. v. Rea*, 721 F.3d 1371, 1381 (Fed. Cir. 2013) ("[A]n unclaimed and undisclosed feature . . . cannot be the basis for finding [the patent] to be non-obvious over the prior art.").  ClassCo argues that the Gulick speaker "produc[es] ringing tones and reproduc[es] caller voice signals to be heard by the user close to the telephone" and that Fujioka produces "reasonably intelligible speech at a distance 'away from the telephone' (for example, perhaps as far as 16m, but probably at least 4m)."  ClassCo Br. 45-46.  ClassCo therefore contends it would be difficult to make a speaker that could be heard both close to and far from the device.  ClassCo Br. 46.[4]

Yet ClassCo incorrectly *assumes* that the apparatus of claim 2 is limited to a device that is used in a building, and must therefore meet its contrived technical requirements.  But claim 2 is not so narrow—it reads on car phone systems as well.  There is no "close and far" requirement in a car phone speaker; the driver is the same distance from speaker no matter what kind of audio signal is played.  And

---

[4] ClassCo's premise is also incorrect:  nothing in Gulick says its speaker is designed to be heard only by users "close to the telephone."  *See* Appx1285-1304.

Marui, after all, discloses *one* such speaker **492** for three different purposes—ringing, phone conversations, and announcements. *See supra* pp. 12-14. Because ClassCo did not limit its claims to an apparatus operable in only one type of environment, Apple did not need to prove that the prior art disclosed a single speaker meeting ClassCo's self-proclaimed technical requirements. *Smith & Nephew*, 721 F.3d at 1381.[5]

### B. ClassCo's Reading Of *KSR* Would Impose Strict Requirements On When A Patent Could Be Found Obvious

#### 1. *ClassCo's rigid "same function" argument has no support in* KSR *or this Court's precedent*

In the face of substantial evidence supporting the Board's decision, ClassCo misstates the law. ClassCo argues that *KSR* imposes a rigid "same function" test in order for a combination to be obvious. ClassCo Br. 32-33. According to ClassCo, *KSR* dictates that a combination of prior art references is obvious only when it "unites old elements *with no change in their respective functions*." ClassCo Br. 32 (quoting *KSR*, 550 U.S. at 416) (emphasis by ClassCo). In making this argument

---

[5] As the Board noted, ClassCo appeared to be arguing that it would not be possible to physically incorporate Gulick's speaker into Fujioka's design. Appx8-9. But as the Board correctly explained, "'[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference . . . . Rather, the test is what the combined teachings of those references would have suggested to those of ordinary skill in the art.'" Appx8-9 (quoting *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981)).

to the Board, ClassCo argued that each prior art element must be added to the combination "*as is*" for a combination to be obvious (Appx1211); an element can do no more than *exactly* what it was doing in the prior art reference. ClassCo contends that, under this standard, there is no prior art speaker that could announce both caller ID information and caller voice signals, because these are different "functions."

But ClassCo's argument is based upon a falsehood—that the "function" of the speaker in Gulick has changed if it is used in Fujioka. Of course it has not. It does not matter if the speaker is part of a combination or by itself; the speaker is still just a speaker; it produces audio based upon the signals it receives. Regardless of the sound the speaker might produce—be it ringer sounds, voice communication sounds, or identity information—it is still functioning as a speaker.

Moreover, *KSR* rejected the imposition of the kind of rigid requirement that ClassCo proffers. *KSR*, 550 U.S. at 419. Far from articulating a strict "same function" test, the Court held that the obviousness "analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418. Indeed, "[c]ommon sense teaches . . . that familiar items may have obvious uses beyond their primary purposes." *Id.* at 420.

Nor did *KSR* state a strict minimum requirement for a patent to be invalid under § 103: that a combination is obvious *only* if it combines known elements with no change in their respective functions. *Contra* ClassCo Br. 32. To the contrary, the Court recognized that not every case would involve "the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement." *KSR*, 550 U.S. at 417. The Court thus held:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*Id.* at 418. In other words, *KSR* requires the opposite of what ClassCo suggests: an expansive and flexible analysis that takes into consideration the teachings of the prior art at as a whole, not some "blinkered focus on individual documents" (or identical functions). *Randall Mfg.*, 733 F.3d at 1362.

This Court's post-*KSR* decisions likewise demonstrate the absence of a rigid "same function" requirement advocated by ClassCo. In *Transocean*, for example, this Court rejected the argument that the combination of prior art references would lead to the rote duplication of prior art elements in a single system. *Transocean*, 617 F.3d at 1304. There, the claimed structure—an offshore drilling rig—required

39

two "advancing stations" that could each place "tubular members" (pipes) on the ocean bed for the same well and a "transfer assembly to move tubular members between the first advancing station and the second advancing station." *Id.* at 1303. The prior art disclosed a drilling rig with two advancing stations operating on two separate wells (as opposed to the same well), and no reference taught a transfer assembly to move tubular members between two advancing stations. *Id.* Instead, the prior art disclosed a transfer assembly that supported a single advancing station. *Id.* Based on the differences between the prior art and the claimed invention, the patentee argued that the combination would result "in a rig with two advancing stations, two preparation stations, and two transfer assemblies." *Id.* The patentee further asserted that its claim was not obvious "because the claimed invention must operate on a single well and [the prior art] only discloses two advancing stations operating on two wells." *Id.* In other words, like ClassCo here, the patentee in *Transocean* had argued that the prior art elements could not be combined to yield the claimed invention without some modification or change in their respective functions.

This Court disagreed. Citing *KSR*, the Court explained: the patentee's "first argument that the combination would result in two advancing stations, two preparation stations, and two transfer assemblies asks us to improperly turn the person of ordinary skill in the art into an 'automaton' that can only add pieces of

prior art." *Id.* at 1304 (citing *KSR*, 550 U.S. at 421). Nor did the Court pause long on the patentee's second argument—that the prior art disclosure of a dual advancing station system working on two wells was limited to a two well (as opposed to a single well) system. The Court held: "It would have been obvious to one of ordinary skill in the art that the dual well system . . . could be combined with the single well system [disclosing the transfer assembly] to result in two advancing stations operating on a single well with a transfer assembly moving tubular members between them." *Id.*

This Court rejected the same argument in *MCM Portfolio LLC v. Hewlett-Packard Co.*, __ F.3d __, 2015 WL 7755665 (Fed. Cir. Dec. 2, 2015). In that case, the Board held that two prior art references disclosing controller chips for flash memory card readers rendered the patent claims obvious. *Id.* at *9. The patentee argued that it "would not have been obvious, when combining the teachings of [the two prior art references], to integrate their functionality in a single chip." *Id.* This Court disagreed:

> [W]e have consistently held, as the Board recognized, that "[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teaches of the references would have suggested to those of ordinary skill in the art.

*Id.* (quoting *In re Keller*, 642 F.2d at 425); *see also Mouttet*, 686 F.3d at 1332 ("It is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements.").

So too here. Just as it would have made no sense for the prior art in *Transocean* or *MCM* to be combined to have duplicative components, there would be no reason to use multiple speakers in a Fujioka/Gulick combination. Appx8. Fujioka outputs an audio announcement (caller identity information) on a speaker. Gulick utilizes a single speaker for outputting both an announcement (a ring tone) and voice audio in a hands-free phone. A Fujioka/Gulick combination would integrate the features and use the conventional speakerphone speaker—which is already used to produce audio from different sources—to provide both caller identity information and voice audio. *Transocean*, 617 F.3d at 1304.

None of the decisions ClassCo cites even remotely suggests a different conclusion. *Contra* ClassCo Br. 34-35. ClassCo identifies no case where a patent was held not invalid due to ClassCo's proffered "same function" requirement. At best, the cited decisions stand for the unremarkable proposition that obviousness requires every limitation to be disclosed in the prior art. For example, in *K/S HIMPP v. Hear-Wear Technologies, LLC*, 751 F.3d 1362 (Fed. Cir. 2014), the third party requester had submitted no evidence as to an element and relied instead on a general statement of what was "known in the art." *Id.* at 1365-66 (agreeing

that "assertions of 'known in the art' cannot substitute for the factual evidence required to conclude that a structural element is a known prior art element"). Likewise, in *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337 (Fed. Cir. 2013), the Court reversed the Board for "misreading" two references as disclosing a necessary element in the claims; the Court did not hold that the Board read the references functions too broadly. *Id.* at 1345.

Nor is it clear why ClassCo relies on many of the other decisions it cites; it provides no explanation for its citations or even a pin cite to aid the Court. Regardless, none is relevant. Some hold that various patents have been held not invalid when the prior art does not disclose a claimed element or motivation, based upon the particular facts of those cases. *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1354 (Fed. Cir. 2013) (reversing invalidity ruling where the district court "recognized that nothing" in the prior art "discloses means to mount the panels in the opposite direction, let alone any guidance to do so," as required by the asserted claims); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011) (holding that based on the Court's analysis of the prior art the references "fail to teach the claim limitation of curing with 'air free of combustion gases'"); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1378 (Fed. Cir. 2004) (reversing grant of JMOL of invalidity in pre-*KSR* decision where there was "substantial evidence whereby a

reasonable jury could have reached the verdict that it would not have been obvious" because there was no "suggestion or motivation" in the prior art); *In re Royka*, 490 F.2d 981, 984 (C.C.P.A. 1974) (reversing invalidity ruling where prior art is missing a claimed element); *In re Edge*, 359 F.2d 896, 899 (C.C.P.A. 1966) (same); *In re Scott*, 323 F.2d 1016, 1019 (C.C.P.A. 1963) (holding that prior art disclosing wood or resin core did not make a paper core for fiberglass rods obvious).  And one decision does not even address obviousness at all.  *See CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1337, 1341 (Fed. Cir. 2003) (addressing enablement and inequitable conduct).

For the same reasons, ClassCo's argument that the Board did not follow the Manual of Patent Examining Procedure's (M.P.E.P.) guidelines fails.  *Contra* ClassCo Br. 41.  ClassCo argues that the M.P.E.P. requires findings that the prior art elements merely perform the "same function" in the combination for the claim to be obvious.  ClassCo Br. 41-42.  But that argument *assumes* that ClassCo's distorted "same function" requirement is the law.  Because it is not, the Board correctly followed the M.P.E.P.'s guidelines.

In sum, ClassCo's effort to contort *KSR* and evade the substantial evidence supporting the Board's findings fails.  *KSR* does not impose the rigid test that ClassCo would require.

### 2. *KSR does not require the detailed identification of a motivation to combine or the problem to be solved by the patent*

ClassCo's misreading of *KSR* extends beyond ClassCo's rigid "same function" requirement. ClassCo also argues that the Board's obviousness finding failed because it provided no detailed reason why a skilled artisan would have combined the prior art elements. ClassCo Br. 37. According to ClassCo, there needed to be a specific reason in the references "to change the functions of Fujioka's identity announcement speaker 6 and Gulick's speakerphone speaker 30." ClassCo Br. 39.

But that kind of explicit teaching is not required. *KSR* rejected that requirement. *KSR*, 550 U.S. at 418 (rejecting need for "precise teachings directed to the specific subject matter of the challenged claim"); *Randall Mfg.*, 733 F.3d at 1362. "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. The *KSR* passage ClassCo cites for support is not to the contrary. That quote merely states that there must be "some articulated reasoning" in the *Board*'s opinion (not the prior art) as to why the patent would have been obvious. ClassCo Br. 37 (emphasis removed). The Board easily met this "some articulated reasoning" requirement. A8; *supra* pp. 25-28.

Nor is ClassCo correct that Apple needed to identify the specific problem that the single speaker claimed in the '695 patent solved. *Contra* ClassCo Br. 39, 43-44. Using a single speaker was just a logical means to a common sense end: to add hands-free capability to a caller ID system like Fujioka. Appx1106-07; *see* Appx1082. Thus, even if *ClassCo* was motivated to invent a single speaker to announce identity information, voice audio for telephone communications, and ringing tones due to some problem it alone identified, Apple did not need to show the same motivation. As *KSR* explained: "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." *KSR*, 550 U.S. at 419; *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012) (holding that courts should "look at any motivation [for combining references, even] beyond that articulated by the patent").

### C.    The Board Correctly Found That Claim 14 Would Have Been Obvious Because Fujioka Discloses That "Identity Information" May Be Associated With Plural Caller Identification Data

ClassCo contends (at 47-51) that Fujioka does not disclose claim 14's requirement that "the identity information is associated with plural items of caller identification data." Appx28 (col.10:25-27). This argument rests entirely on a mistaken reading of "identity information."

46

According to ClassCo, claim 14 requires that a specific item of identity information (such as a single pre-recorded name) be stored in a specific place in memory and be associated with multiple telephone numbers. Class Br. 50. That is incorrect. ClassCo's argument adds a new memory storage requirement to claim 14, which has no such limitation. As illustrated below, claim 14 depends from claim 1, *not* claim 2.

1. A caller announcement apparatus for a telephone system that provisions a telephone call between a caller telephone at a caller station and a called telephone at a called station, where the caller station is associated with an identity, where the telephone system provides signals to the called station that include caller identification signals representative of the identity associated with the caller station and voice signals representative of audio detected by an audio transducer of the caller telephone, and where the voice signals are processed by the called telephone to produce audio using an audio transducer at the called station, the caller announcement apparatus comprising:

a signal receiver at the called station operatively connected to the telephone system to receive signals therefrom, the signal receiver being operative to extract caller identification signals from the signals received from the telephone system and to provide caller identification data corresponding to the extracted caller identification signals;

a processing unit operatively connected to the signal receiver to receive caller identification data therefrom, the processing unit being operative to provide identity information associated with the caller identification data;

an audio announcing circuit operatively connected to the processing unit to receive identity information therefrom, the audio announcing circuit being operative to use the identity information to produce audio using the audio transducer at the called station.

2. The caller announcement apparatus of claim 1 wherein the processing unit comprises memory storage for storing identity information associated with the caller identification data.

14. The caller announcement apparatus of claim 1 wherein the identity information is associated with plural items of caller identification data.

Claim 1 has *no* memory storage requirement; it states only that identity information be *provided* by the processing unit and then *used* by the announcing circuit. Claim 14 similarly has no such requirement. Rather, it is claim 2 that requires "memory storage for storing identity information associated with the caller identification data." Appx28 (col.9:39-42).

As the Board and the Examiner explained, "identity information" should be given its ordinary and customary meaning: "something that identifies, such as a name that identifies a phone number as a particular person." Appx1107; *see* Appx9 (agreeing with the Examiner). The Board correctly found Fujioka disclosed identity information as properly construed. Appx9. Like claim 14, Fujioka can associate a "name" with more than one telephone number. For example, a user can program a name (such as "Mom") to all of Mom's telephone numbers, and exactly the same information—the name "Mom"—will be *provided* to the speech generator when she calls from any of her phones. ClassCo concedes that Fujioka works this way. ClassCo Br. 50-51. That is all claim 14 requires.

### 1. *ClassCo's proposed construction impermissibly adds storage limitations to all its claims and makes claim 2 superfluous*

ClassCo contends that "identity information" should be construed to mean: "a physical item that can only exist in one place at one time (e.g., a particular section of a particular memory element containing a stored name, which is not recited in the claim)." ClassCo Br. 50. It further posits that because Fujioka does

not *store* a single item of identity information associated with plural items of caller ID data in a particular section of a particular memory element containing the stored name, it does not disclose that requirement.

There is no support for ClassCo's proposed construction. The Board and the Examiner's decision to give "identity information" its ordinary and customary meaning—"something that identifies"—is consistent with the claims. Appx9; Appx1107-08. By contrast, ClassCo's narrow construction adds a storage limitation to claim 14 that simply does not exist—that "identity information" is "a physical item that can only exist in one place at one time." ClassCo Br. 50. But the specification does not even mention "identity information," let alone require that it must be a "physical item" that can only exist "in one place at one time."

Moreover, ClassCo's attempt to construe "identity information" to add a memory storage limitation fails because it would make other claim language superfluous. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt construction that would make a claim limitation meaningless); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000) (same). ClassCo's argument conflates claims 2 and 14. Storing identity information in memory is the sole additional requirement of dependent claim 2: "The caller announcement apparatus of claim **1** wherein the processing unit comprises *memory storage for storing* identity information

associated with the caller identification data." Appx28 (col.9:39-42) (emphasis added). By contrast, independent claim 1 (and claim 14 from which it depends) recites *no* requirement that identity information be stored in "memory" or that there be any "memory" at all. Appx28 (col.9:9-38) (no mention of "memory"). Rather, claim 1 merely requires "the processing unit being operative to *provide* identity information associated with the caller identification data." Appx28 (col.9:31-33) (emphasis added). Thus, to construe "identity information" as ClassCo urges would effectively impose a storage requirement and import limitations from claim 2 into claims 1 and 14.[6]

In sum, the Board and Examiner correctly construed identity information. ClassCo's proposed construction is inconsistent with the breadth of claims 1 and 14.

### 2. *Claim 14 is unpatentable based on Fujioka in view of Gulick*

Substantial evidence supports the Board's decision as to claim 14. Appx28 (col.10:25-27). Because claim 14 depends on claim 1, the claim states that the device's processing unit "*provide* identity information" and that such identity

---

[6] ClassCo's construction also adds requirements recited in other dependent claims. Dependent claims 3 and 4 state that identity information can be added, subtracted, and edited. Appx28 (col.9:43-49). And dependent claims 12 and 13 state that identity information is "recorded audio information" and audio "recorded by a user of the called telephone." Appx28 (col.10:17-24).

information be "associated with plural items of caller identification data."  Appx28 (col.9:31-33; col.10:25-27) (emphasis added).  As noted above, claim 14 does not, however, recite that the identity information "associated with plural items of caller identification data" be *stored*, as memory storage is required by claim 2 instead.

In Fujioka, the same identity information can be associated with different telephone numbers.  Appx1084.  Fujioka discloses that the caller's name may be entered into memory by entering numeric codes.  When a call is received, a speech generator "converts the contents of the memory **15**, which are read out via the central control circuit **14**, into the signal indicating the frequency characteristic of the speech and provides it to the speaker **6**, thus providing an audible indication of the ID information"—the caller's name.  Appx1257 (col.4:33-39).  These steps can be repeated, so that the same name (identity information) is entered for more than one number (for example home and work).  Thus, regardless of whether the caller calls from home or work, the processing unit of Fujioka will *provide* the exact same "identity information"—the caller's name—when it announces who is calling.

ClassCo argues that Fujioka does not meet claim 14's requirement because the identity information might be *stored* more than once and in different places in the device's memory.  ClassCo Br. 51 (arguing that there must be "a single item of identity information").  But that argument is nothing more than a reprise of its

flawed claim construction argument.  *Storage* is not required by claim 14.  Thus, Apple did not need to prove that Fujioka *stores* a single item of identity information associated with plural items of caller identification data.

### D. ClassCo's Secondary Considerations Evidence Is Uncompelling And Has No Nexus To Its Claims

ClassCo contends that its claims are non-obvious in light of secondary considerations:  industry praise, long-felt but unmet need, and commercial success. The Board correctly found ClassCo's evidence was insufficient *and* had no nexus to the features recited in the claims.  Substantial evidence supports both findings.

#### 1. *The Board correctly found no industry praise or long-felt but unmet need*

The Board made detailed findings that ClassCo's evidence of "industry praise" was simply a recitation of objective evidence of the features in the device and *not* "industry praise."  Appx9-11.  Even though these findings are reviewed for substantial evidence, ClassCo nowhere challenges them.

In addition, the Board correctly found (and ClassCo's argument ignores) that ClassCo "provid[ed] insufficient evidence to demonstrate persuasively that customers were, indeed, 'highly satisfied' and to what extent the customers were 'satisfied.'"  Appx13.  The Board also found that, "even if customers were 'satisfied' to a sufficient extent, [ClassCo] does not explain how the level of

customer satisfaction correlates with a 'long-felt need in the industry.'" Appx13. ClassCo does not challenge these findings either.

To be sure, ClassCo *describes* the evidence (articles and customer information) it submitted to the Board in its "Statement of the Case." ClassCo Br. 17-25. But it fails to *argue* how the Board's findings rejecting this evidence were not supported by substantial evidence. ClassCo's only argument with respect to this evidence disputes the Board's finding of no nexus (discussed below). Without more, the Court should not disturb the Board's findings. *CardSoft, LLC v. VeriFone, Inc.*, __ F.3d __, 2015 WL 7755661, at *6 (Fed. Cir. Dec. 2, 2015) ("Arguments that are not appropriately developed in a party's briefing may be deemed waived."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("We find that these mere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument."). And even if ClassCo had tried and succeeded in showing that *some* of those findings were not supported by substantial evidence, that meager evidence would pale in comparison to the prima facie case discussed above.

### 2.    *The Board correctly found no nexus between claims 2 and 14 and ClassCo's evidence of secondary considerations*

The Board also correctly found that ClassCo failed to establish a nexus between its evidence of secondary considerations and the claimed inventions of claims 2 and 14.

Secondary considerations evidence is relevant only if there is a sufficient nexus to the patented invention.  As this Court has explained, "'nexus' is often used . . . to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness."  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).  In order for there to be a "nexus," the patentee's evidence must be "reasonably commensurate with the scope of the claims."  *Rambus*, 731 F.3d at 1257.  The Court has held: "Where the offered secondary consideration actually results from something other than what is both claimed and *novel* in the claim, there is no nexus to the merits of the claimed invention."  *In re Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011).

Applying these principles, the Board correctly found no nexus.  The Board found that ClassCo's evidence of secondary considerations was directed to features not claimed:  "[ClassCo] does not assert or demonstrate sufficiently that any of the stated features (e.g., 'lifting the handset without "answering the call"' or 'record[ing a] five-second voice announcement' upon depression of a 'RECORD

button,' for example) is recited in the claims." Appx12; *see* Appx11-13. ClassCo provides no substantive argument to the contrary—other than making the conclusory assertion that it "explained with painstaking particularity the connection between each item of evidence and the features of claim 2 in combination with claim 1's audio announcing circuit and claim 14 in combination with claim 1's audio announcing circuit." ClassCo Br. 53. That "argument" does not disprove the substantial evidence in this case. *SmithKline Beecham*, 439 F.3d at 1320.

Nor could ClassCo show a nexus based on these features. *E.g.*, Appx1653-54. Lifting a telephone handset without answering the call to hear caller identification information, for example, is not recited in claims 2 or 14. Appx28 (col.9:22-42; col.10:25-28). ClassCo thus fails to "establish a nexus between the evidence and the merits of the *claimed invention*." *Kao*, 639 F.3d at 1068; *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("[I]f the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant."). That feature is recited in different claims, and ClassCo has never pressed those narrowing limitations in this case. *See* Appx28 (col.9:50-

col.10:5); *see also* Appx28 (col.10:21-24) (reciting that the identity information "is recorded by a user of the called telephone").[7]

Even so, ClassCo's evidence of secondary considerations at best pertains to features previously disclosed in the prior art. This Court has held that evidence relating exclusively to what is known in the prior art cannot be used to establish a nexus. *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1369-70 (Fed. Cir. 2011) ("If commercial success is due to an element in the prior art, no nexus exists."); *Ormco*, 463 F.3d at 1312 (holding that objective evidence of non-obviousness lacks a nexus if it exclusively relates to a feature that was "known in the prior art").

That is the case here: as the Board correctly found, ClassCo's evidence (industry praise, long-felt but unmet need, commercial success) is directed to the audible announcement of stored identity information, which enabled users to hear pre-recorded identity information rather than having to look at a caller ID display. Appx11-14. The Board correctly found that this feature (from Fujioka, among

---

[7] ClassCo argues that the Board "may have been misled" by Apple's suggestion at oral hearing that the ClassCo products' housing speaker was the subject of the objective evidence. ClassCo Br. 53. This argument lacks any merit. Apple did not make that argument at the oral hearing itself, and there is no indication that the Board's decision was based on such an argument. Instead, the Board went over ClassCo's evidence in detail, compared it to the scope of claims 2 and 14, and found no nexus. Appx9-15.

other references) was well known in the prior art. Appx11 ("Under these circumstances, the alleged 'praise' stems from what was known in the prior art so there can be no nexus."); Appx14 ("Hence, at best, the alleged commercial success would stem from a feature disclosed in the prior art so there can be no nexus."); Appx1256; Appx2015-16 (Sprang). ClassCo hardly confronts these findings, other than asserting (without factual support) that its evidence is directed to features "that are not shown in the prior art." ClassCo Br. 53. Indeed, ClassCo makes no attempt to identify *which* features were "not shown in the prior art," and it nowhere explains how its evidence relates to the same speaker providing audible caller ID information and voice signals from the caller.[8]

Finally, ClassCo contends that because it received more than $200,000 in royalties after claim 1 was cancelled, all licensing revenue must be attributable to claims 2 and 14. ClassCo Br. 55. But after examining ClassCo's evidence, the Board found that it "d[id] not find specific evidence demonstrating why 'Philips took a license from ClassCo' and what specific claim features caused Philips to take the alleged license(s), if any." Appx14. Indeed, the declaration upon which

---

[8] ClassCo also fails to identify any evidence of secondary considerations regarding claim 14, which recites associating one item of identity information with plural items of caller identification data. At most, ClassCo merely provides statements of the alleged features, not praise, commercial success, or indications of long-felt need.

ClassCo relies contains little more than a bald assertion that Philips took the license based on claims 2 and 14.  Appx1822.  And ClassCo's declarant even concedes that Philips took the license "particularly" due to "the audio announcing circuit," which is recited in cancelled claim 1.  Appx1882.  Based on that sparse evidence, there is no reason to disturb the Board's factual finding.

The Board correctly found that ClassCo's weak evidence of secondary considerations had no nexus to its claims or was exclusively disclosed in the prior art.  ClassCo fails to show the Board's findings are not supported by substantial evidence.

## CONCLUSION

The Board's decision should be affirmed.  If the Board's decision is reversed or vacated for any reason, however, the case should be remanded so the Board can consider the Examiner's additional rejections in the first instance.

Respectfully submitted,

Dated:  December 21, 2015

/s/ David L. Fehrman

DAVID L. FEHRMAN
MEHRAN ARJOMAND
ALEX S. YAP
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
Telephone:  213.892.5200
DFehrman@mofo.com

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  202.887.1500

*Counsel for Appellee*
*Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on December 21, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  December 21, 2015                         /s/ David L. Fehrman

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Rule 32(a) of the Federal Rules of Appellate Procedure because it contains 12,273 words.

Dated:  December 21, 2015                    _____ /s/ David L. Fehrman _____

dc-807601