**2015-1853**

In The

# United States Court of Appeals

### For The Federal Circuit

## CLASSCO, INC.,

*Appellant,*

## v.

## APPLE, INC.,

*Appellee.*

### APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE PATENT TRIAL AND APPEAL BOARD REEXAMINATION CONTROL NO. 95/002,109

———————————

### REPLY BRIEF OF APPELLANT

———————————

**David M. Quinlan**
**DAVID M. QUINLAN, P.C.**
**Post Office Box 8088**
**22 Monterey Drive**
**Princeton, New Jersey  08543**
**(609) 921-8660**

*Counsel for Appellant*                    *Dated: February 22, 2016*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# CERTIFICATE OF INTEREST

Undersigned Counsel certifies the following:

1.     The full name of every party or amicus represented by me is:

ClassCo, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

ClassCo, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

David M. Quinlan
DAVID M. QUINLAN, P.C.
PO Box 8088
22 Monterey Drive
Princeton, NJ 08543
Phone: (609) 921-8660

Date:  February 22, 2016

/s/ David M. Quinlan
*Attorney for Appellant, ClassCo, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..............................................................i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ..................................................iv

ARGUMENT ........................................................................1

I.    CLASSCO'S OPENING BRIEF REFUTES THE PTAB'S LEGALLY FLAWED OBVIOUSNESS ANALYSIS ........................1

    A.    The PTAB Legally Erred in its Application of the *KSR* Principle that a Combination is Obvious When It "Only Unites Old Elements With No Change in Their Respective Functions" ...............................................2

    B.    ClassCo's Application of the *KSR* Obviousness Rationale Used by the PTAB Regarding "Combining Prior Art Elements According to Known Methods to Yield Predictable Results" is Conventional.........................................3

    C.    Fujioka's "Audible Indication" of a Caller's Identity Performs a Function Different From Gulick's Ringing..............3

    D.    ClassCo's Uncontested Evidence Shows That Using the Same Speaker for Caller Announcement and Caller Voice in a Fujioka/Gulick Combination Would Not Have Yielded Predictable Results .......................................5

    E.    The PTAB's Failure to Cite Any Apple Evidence Deprives This Court of Its Proper Appellate Role.....................9

II.    CLAIM 2 HAS NOT BEEN SHOWN TO BE *PRIMA FACIE* OBVIOUS BY APPLICATION OF ANY VALID LEGAL PRINCIPLE.....................................................................10

A.     The PTAB Advanced No Articulated Reasoning With a Rational Underpinning to Support Its Legal Conclusion That Claim 2 Would Have Been Obvious .................................13

B.     The Caller Announcement Apparatus with the Claimed Audio Announcing Circuit Solves a Problem Not Recognized by the Prior Art ......................................................16

III.    THE RECORD ESTABLISHES THE RELEVANCE OF THE PATENT OWNER'S OBJECTIVE EVIDENCE TO THE PATENTABILITY OF THE CLAIMED INVENTION ...................17

IV.    THE PTAB'S ANALYSIS OF CLAIM 14 IS LEGALLY FLAWED BECAUSE OF THE PTAB'S FAILURE TO UNDERSTAND THE DIFFERENCE BETWEEN THE CLAIM TERMS "IDENTITY" AND "IDENTITY INFORMATION" ..............................................................25

A.     The Examiner Misconstrued the Claim Terms "Identity Information" and "Identity".........................................25

B.     The PTAB Erred in Adopting the Examiner's Flawed Construction and Ignoring ClassCo's Argument Refuting It ...............................................................................................27

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................28

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .......................................................................6

*CardSoft, LLC v. Verifone, Inc.*,
2015 U.S. App. LEXIS 20847 (Fed. Cir. Dec. 2, 2015) ...............................24

*Cutsforth, Inc. v. Motivepower, Inc.*,
2016 U.S. App. LEXIS 1083 (Fed. Cir. Jan. 22, 2016) (nonprecedential) ...10

*Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*,
851 F.2d 1387 (Fed. Cir. 1988) .....................................................................24

*Great Atl. & Pac. Tea Co.*,
340 U.S. 147 (1950).........................................................................................2

*In re Huston*,
308 F.3d 1267 (Fed. Cir. 2002) .......................................................................9

*In re Imes*,
778 F.3d 1250 (Fed. Cir. 2015) .............................................................. 25-26

*In re Kahn*,
441 F.3d 977 (Fed. Cir. 2006) .......................................................................13

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ................................................8, 9, 10, 12, 17

*In re Sang-Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) .................................................................9, 10

*K/S HIMPP v. Hear-Wear Tech., LLC*,
751 F.3d 1362 (Fed. Cir. 2014) .....................................................................13

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007).................................................................................*passim*

*Leo Pharm. Prods., Ltd. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ....................................................17

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
    ___ F.3d ___, 2015 U.S. App. LEXIS 20848 (Fed. Cir. Dec. 2, 2015).....11, 12

*Power Integrations, Inc. v. Lee*,
    797 F.3d 1318 (Fed. Cir. 2015) ....................................................10

*Rambus Inc. v. Rea*,
    731 F.3d 1248 (Fed. Cir. 2013) ....................................................24

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001) ....................................................28

*Smith-Kline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ....................................................24

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    ___ U.S. ___, 135 S. Ct. 831 (2015) .......................................25, 26

*Tokai Corp. v. Easton Enter. Inc.*,
    632 F.3d 1358 (Fed. Cir. 2011) ....................................................18

*Transocean Offshore Deepwater Drilling, Inc. v.*
*Maersk Contractors USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010) ....................................................11

*Trimed, Inc. v. Stryker Corp.*,
    608 F.3d 1333 (Fed. Cir. 2010) ....................................................15

## REGULATION

37 C.F.R. § 1.947 ....................................................................................7

## OTHER AUTHORITY

M.P.E.P. § 2143A (9th ed., March 2014, rev. Nov. 2015) ....................................3, 28

# ARGUMENT

Apple's Brief for Appellee does not overcome any arguments for reversal of the PTAB in ClassCo's opening Brief of Appellant. Apple did not contend that either Fujioka or Gulick discloses the '695 patent's claimed "audio announcing circuit operative to use identity information to produce audio using the [caller voice signal] audio transducer at the called station." (A28) Apple did not establish that the PTAB's application of *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), to reject claims 2 and 14 was correct as a matter of law. Apple did not point to substantial evidence in the record supporting the PTAB's finding of a lack of nexus between ClassCo's uncontested objective evidence and the audio announcing circuit feature of claims 2 and 14. And Apple did not establish that the PTAB's construction of claim 14 was correct or that claim 14 is not patentable with the correct construction.

Apple also failed to rebut ClassCo's arguments establishing the patentability of '695 patent claims 2 and 14 when the obviousness jurisprudence of the Supreme Court and this Court is correctly applied.

## I.    CLASSCO'S OPENING BRIEF REFUTES THE PTAB'S LEGALLY FLAWED OBVIOUSNESS ANALYSIS

The first issue for this Court is whether the PTAB committed legal error in its application of *KSR*'s holding that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than

yield predictable results." PTAB Decision (A6). As the Supreme Court explained, that principle is no more than a restatement and reaffirmation of the long-standing doctrine denying a patent to any "<u>combination which only unites old elements with no change in their respective functions</u> . . . ." *KSR*, 550 U.S. 415-16 (quoting *Great Atl. & Pac. Tea Co.*, 340 U.S. 147, 152-153 (1950) (emphasis supplied)). ClassCo Br. 32-34.

> **A.** **The PTAB Legally Erred in its Application of the *KSR* Principle that a Combination is Obvious When It "Only Unites Old Elements With No Change in Their Respective Functions"**

The references are Fujioka, which discloses a speaker 6 for announcing a caller's identity from stored identity information, but does not use that speaker for caller voice, and Gulick, which discloses a speakerphone that uses a single speaker 30 for ringing and caller voice. The agreed difference between the prior art and the claims is that neither reference discloses using the same speaker for the separate functions of announcing a caller's identity <u>and</u> for producing audio from caller voice signals, as does the claimed audio announcing circuit. PTAB Decision (A6-A7); Apple Br. 1-2.

ClassCo believes the PTAB failed to establish that it would have been obvious to have a speaker that performs both functions in a Fujioka/Gulick combination. ClassCo Br. 15, 28.

**B.     ClassCo's Application of the *KSR* Obviousness Rationale Used by the PTAB Regarding "Combining Prior Art Elements According to Known Methods to Yield Predictable Results" is Conventional**

ClassCo's reading of *KSR* on this point does not "misstate[] the law." Apple Br. 37. It exactly tracks the way the USPTO directs its application. *M.P.E.P.* § 2143A (9th ed., March 2014, rev. Nov. 2015); ClassCo Br. 41-43. The USPTO requires the same factual findings that the PTAB and the examiner failed to make. *See M.P.E.P.* at 2100-144 ("If any of these findings cannot be made, then this rationale cannot be used to support a conclusion that the claim would have been obvious . . .").

**C.     Fujioka's "Audible Indication" of a Caller's Identity Performs a Function Different From Gulick's Ringing**

Apple's argument is that a speaker performs the same function no matter the source or purpose of the signals it converts to sound, because a "speaker is still just a speaker," and "regardless of the sound the speaker might produce—be it ringer sounds, voice communication sounds, or identity information—it is still functioning as a speaker." Apple Br. 38. Just stating the argument reveals its fallacy: different speakers that produce sounds for different purposes using electrical signals with different sources obviously do not perform the same function in a *KSR* sense. 550 U.S. at 422, 424-25 ("[w]e see little difference between the teachings of Asano and Smith and the adjustable electronic pedal disclosed in claim 4 of the Engelgau patent;" Asano disclosed an adjustable pedal

without a rotation position sensor and Smith disclosed the missing pedal rotation position sensor, mounted as described in the claimed adjustable pedal).

ClassCo agrees that a speaker can "produce audio derived from multiple types of data in a telephone system. . . ." PTAB Decision (A6). But the PTAB failed to explain how that would have made it obvious to use any given speaker "in a telephone system" to produce any and all types of sound for any and all purposes. For example, a typical mobile phone converts different electrical signals to sound using two speakers, one for the common handset function (when holding the phone to your ear) and a different speaker in the phone for playing music—separate speakers for different functions.

The PTAB cast the function of Fujioka's speaker 6 as producing a "<u>call announcing</u> audio signal with identity information," and then equated its function to that of Gulick's speaker 30, which uses "the same audio transducer to output a ringing signal <u>announcing an incoming call</u> as well as the audio signal received from the caller." (A5) (emphasis supplied); *see also* RAN (A1082). But the PTAB's "<u>call</u> announcing" function of Fujioka's speaker is actually <u>caller</u> announcement: "an audible indication of the ID information such as the originating subscriber's name." (Col. 4, lines 37-39, A1257) The '695 patent uses similar formulations: the claims describe a "caller announcement apparatus" (A28); the patent title is "Calling Party Announcement Apparatus" (A17); and the patent

- 4 -

throughout refers to announcing the caller's identity. The PTAB thus departed from even what the references teach as different functions: caller announcement over Fujioka's speaker 6 and ringing (the PTAB's "call announcement") by Gulick's speaker 30. *See* ClassCo Br. 37-38. Treating caller announcement and ringing as the same function is not taught by either reference; indeed, the term "call announcement" was invented by the examiner, and is not used by those skilled in the telephone art. 2nd Bress Declaration, paras. 22-23. (A1777-A1778)

### D. ClassCo's Uncontested Evidence Shows That Using the Same Speaker for Caller Announcement and Caller Voice in a Fujioka/Gulick Combination Would Not Have Yielded Predictable Results

Since the PTAB erroneously invoked the *KSR* test applicable to combinations that "only unite[] old elements with no change in their respective functions," it is irrelevant whether or not the PTAB's resulting Fujioka/Gulick combination would have yielded predictable results.

Nevertheless, the PTAB cited no evidence for its conclusion that combining Fujioka and Gulick "would have resulted in no more than the predictable result of the use of a speaker in the telephone system that produces audio derived from data in a telephone system, the data being any of voice signals, identity information, or 'tonal ringing call alerting . . . .'" (A6) ClassCo's opening brief included a detailed discussion of ClassCo's record, principally the expert testimony of Mr. Bress, explaining why "known methods" of combining "familiar elements" in the manner

- 5 -

proposed by the PTAB would <u>not</u> have yielded predictable results. ClassCo Br. 39-41, 45-47.

Apple countered with an excerpt from the PTAB Decision, juxtaposed with citations to Dr. Sprang's testimony, giving the impression that the PTAB had relied on Dr. Sprang:

> As the Board found, a person of ordinary skill in the art would have known that Gulick's disclosed speakerphone could "produce audio derived from multiple types of data within a telephone system (e.g., voice signals or 'tonal ringing call-alerting')." Appx6; see Appx2016 (Sprang). There was no reason to believe Gulick's teachings were limited to just two types of audio data. To the contrary, Apple's expert, <u>Dr. Sprang, explained: "A single audio transducer could be easily adapted to play the ring tone, audio identification signal, and audio voice signal</u> . . . ." Appx2018 (Sprang).

Apple Br. 31-32 (emphasis added). In other words, on the question of predictable results, Apple relied on Dr. Sprang's conclusory statement that a Fujioka/Gulick combination using one speaker to produce caller identity announcements and caller voice would have been "easily" accomplished.

Dr. Sprang's testimony on predictable results does not meet the threshold requirement for consideration by the Court. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) ("Verizon's expert testified that 'The motivation to combine would be because you wanted to build something better. You wanted a system that was more efficient, cheaper, or you wanted a system that had more features, makes it more attractive to your customers, because

by combining these two things you could do something new that hadn't been able to do before.'") In contrast, Mr. Bress testified to the complex technical issues facing one skilled in the art seeking to use a single speaker to produce caller identity announcements and caller voice in a Fujioka/Gulick combination. Dr. Sprang's conclusory testimony quoted above is his only "rebuttal" of Mr. Bress's testimony, which was backed up by almost 400 pages of documentation. 1st Bress Declaration, para. 37 (A1442-A1443), and Bress Exhibits 4-10 (A1488-A1643); ClassCo Br. 45-46. The only evidence submitted by Apple other than Dr. Sprang's testimony was his resume. (A1727) The bottom line is that ClassCo's evidence on unpredictable results is uncontested as a legal matter.

And Apple in fact did not "explain[] to the Board [that] ClassCo's argument that a skilled artisan would not expect a single speaker to work fails 'with respect to Gulick, because Marui's disclosure of the use of a single speaker for announcement of caller identity and hands-free communication.' Appx1922." Apple Br. 32. Appx 1922 is in Apple's Third Party Comments After Patent Owner's Response to Action Closing Prosecution Pursuant to 37 C.F.R. § 1.947, a paper submitted to the examiner, not the PTAB. Moreover, Apple acknowledged that Marui formed no part of the PTAB Decision (A5, A15). Apple Br. 19. Thus, the PTAB made no findings regarding the scope and content of Marui, or regarding differences between it and the '695 patent claims, both of which issues were

contested before the PTAB. *Compare* Respondent's Appeal Brief, at 13-14 (A2000-A2001), *with* Patent Owner Rebuttal Brief, at 10-12 (A2050-A2052).

Apple further argued that Mr. Bress's testimony is belied by the presence in the '695 patent's preferred embodiment of a speakerphone extension that can produce identity information. Apple Br. 34-35. It is true that a disclosed embodiment of the invention can use standard telephones (including a standard speakerphone) to deliver caller identity announcements using the telephone's caller voice speaker, which is one of its advantages. But the issue is still whether it would have been obvious to one of ordinary skill in the art to have a single speaker do the different jobs of Gulick's speaker 30 and Fujioka's speaker 6 in the PTAB's hypothetical Fujioka/Gulick combination. Using the '695 patent disclosure in that inquiry is barred. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) ("[c]lose adherence to this methodology is especially important in cases where the very ease with which the invention can be understood may prompt one 'to fall victim to the insidious effect of a hindsight syndrome wherein that which only the invention taught is used against its teacher.' [citation omitted]").

Finally, Apple contended that the PTAB "had every right to rely on Apple's evidence instead of ClassCo's." Apple Br. 32. But the PTAB did not once even refer to, much less rely on, any of Dr. Sprang's testimony—or even to any Apple argument (except in connection with ClassCo's objective evidence). (A14) And as

already noted, Apple did not introduce sufficient evidence regarding predictable results on which the PTAB even <u>could</u> have relied. *In re Kotzab*, 217 F.3d at 1369 ("[s]ubstantial evidence is more than a mere scintilla of evidence").

### E.    The PTAB's Failure to Cite Any Apple Evidence Deprives This Court of Its Proper Appellate Role

Finally, Apple argued that this Court can proceed in the face of the PTAB's failure to cite to any Apple argument or evidence in connection with any point relating to Fujioka or Gulick:

> Under the substantial evidence standard, this Court considers all the evidence supporting the Board's findings, not just those portions of the record on which the Board has explicitly relied. *In re Huston*, 308 F.3d 1267, 1281 n.9 (Fed. Cir. 2002).

Apple Br. 25. Aside from there being no substantial Apple evidence on predictable results, *Huston* does not apply for other reasons. First, the "portions of the record" relied on by the *Huston* Court were the references themselves. Second, *Huston* was an *ex parte* case, in which there was no conflicting evidence for the PTAB to analyze so that this Court could review its findings. Third, there was an evidentiary declaration in the *Huston* record that the Board <u>did</u> consider. *Id.* at 1277-78.

*In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002), is more to the point on the PTAB's obligation to provide this Court with an analysis allowing complete appellate review. The Court dismissed "conclusory statements" reminiscent of those of the PTAB here, and explained what this Court expects from the PTAB:

"the Board must not only assure that the requisite findings are made, based on evidence of record, but must also explain the reasoning by which the findings are deemed to support the agency's conclusion." 277 F.3d at 1343-44.

Recent cases citing *In re Sang-Su Lee* include an *ex parte* reexamination, *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1323 (Fed. Cir. 2015) ("Under the APA, the board is obligated not only to come to a sound decision, but to fully and particularly set out the bases upon which it reached that decision"), and an *inter partes* review, *Cutsforth, Inc. v. Motivepower, Inc.*, 2016 U.S. App. LEXIS 1083, at *7 (Fed. Cir. Jan. 22, 2016) (nonprecedential) ("Broad, conclusory statements are not enough to satisfy the Board's obligation to provide reasoned explanation for its decision"). *See also In re Kotzab*, 217 F.3d at 1371 (Fed. Cir. 2000) ("particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed").

Apple cannot have this Court fulfill the PTAB's responsibilities simply by pointing out where Apple thinks its arguments and evidence support the PTAB.

## II.  CLAIM 2 HAS NOT BEEN SHOWN TO BE *PRIMA FACIE* OBVIOUS BY APPLICATION OF ANY VALID LEGAL PRINCIPLE

Apple implied that *KSR* repudiated ClassCo's "rigid thinking" in favor of an "expansive and flexible approach." Apple Br. 23, quoting from *KSR*. But the Supreme Court was criticizing what it said was a too-rigid application of the

- 10 -

"teaching, suggestion, or motivation" test this Court had used in upholding the claim at issue in *KSR*.

Apple's cites two cases it says illustrate what it means by a "flexible and expansive approach." Apple Br. 39-42. In one, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010), a combination of the references, which included all of the claim elements, would have resulted in a drilling assembly with two identical advancing stations, but the Court held that it would have been obvious to omit elements that perform duplicate functions. *Id*. at 1303-04. This approach does not make '695 patent claim 2 obvious because Fujioka's speaker 6 and Gulick's speaker 30 perform different functions in a Fujioka/Gulick combination.

Apple's other case, *MCM Portfolio LLC v. Hewlett-Packard Co.*, ___ F.3d ___, 2015 U.S. App. LEXIS 20848 (Fed. Cir. Dec. 2, 2015), involved a controller coupled between a computing device and a flash memory card storage system. The controller included an interface for accepting a flash memory card, a detector for determining if the card itself could perform error correction, and a flash adaptor for performing error correction with cards that could not. The Kobayashi reference disclosed a flash memory card reader ("interface") with a sensor ("detector") for determining if an inserted card could perform error correction. Kobayashi's interface could not perform error correction itself. The

Kikuchi reference disclosed a flash memory card with a single chip for error correction. The Court said it would have been obvious to put Kikuchi's chip on Kobayashi's interface. 2015 U.S. App. LEXIS 20848 at *22-*23. In other words, the chip performed the same function in the Kobayashi/Kikuchi combination as it did in Kikuchi—no further modification was needed to meet the claims.

Contrast those cases with *In re Kotzab*, *supra*, in which it was found to be nonobvious to use "a single temperature sensor to control a plurality of control valves." 217 F.3d at 1370. That is, a sensor is not still just a sensor, just like a speaker is not "still just a speaker . . . regardless of the sound it might produce." Apple Br. 38; *see* page 3, *supra*.

ClassCo also does not contend that the claimed caller announcement apparatus would have been obvious only if it were "necessary" to use the same speaker for producing identity announcements and caller voice signals in a Fujioka/Gulick combination. *See* PTAB Decision at 6 (A7); Apple Br. 20. ClassCo's point to the PTAB was that using the same speaker for caller voice and identity information, as claimed, does not follow as a matter of course just by adapting Fujioka for operation in Gulick's "hands-free (speakerphone) manner." (A1208-A1209) Nor did ClassCo argue at page 15 of its brief to the PTAB (A1211) that the '695 patent claims are patentable because it would not have been obvious "to have bodily incorporated Gulick into Fujioka." *See* PTAB Decision at

7 (A8); Apple Br. 37, n.5. In fact, ClassCo assumed that it would have been obvious to use Gulick's teaching to make Fujioka's telephone terminal capable of hands-free speakerphone operation, but argued that it would <u>not</u> have been obvious for the resulting combination to have had the claimed "audio announcing circuit."

A.    **The PTAB Advanced No Articulated Reasoning With a Rational Underpinning to Support Its Legal Conclusion That Claim 2 Would Have Been Obvious**

*KSR*, unlike the present case, involved a claim that simply combined elements already known in the prior art. *See K/S HIMPP v. Hear-Wear Tech., LLC*, 751 F.3d 1362, 1366 (Fed. Cir. 2014) ("*KSR* related to the combinability of references where the claim limitations were in evidence"). But the Supreme Court also offered general guidelines for applying its "flexible and expansive approach" to combining disclosures of multiple sources of prior art. Among the factors to be considered are "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." 550 U.S. at 418. The Court insisted that:

> To facilitate review, this analysis should be made explicit. *See In re Kahn, 441 F.3d 977, 988 (CA Fed. 2006)* ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with

some rational underpinning to support the legal conclusion of obviousness").

*Id.* (italics in original)

The PTAB employed no such analysis here. It failed to advance any reason to combine the known elements <u>in the fashion claimed</u>. And it certainly did not look to anything like "the effects of demands known in the design community or present in the marketplace." The only real PTAB "analysis" is on page 5 of the Decision on Appeal:

> In other words, based on Gulick, one of ordinary skill in the art would have understood that a speaker in a telephone system may (and does) produce audio derived from multiple types of data in a telephone system, including "tonal ringing call-alerting" and "caller voice signals."

(A6) But all this really says is that the prior art knew that a speaker in a telephone device could have multiple inputs that produce different sounds for different purposes (functions). But the prior art does not teach that one speaker can be used for <u>any and all</u> different sound-producing functions. Nor does it teach why Fujioka's identity information speaker 6 would be used for caller voice, or why Gulick's caller voice speaker 30 would be used for caller identity announcements. The PTAB basically said that it would have been obvious *a priori*, just because Gulick discloses a single speaker 30 for caller voice and ringing. No "articulated reasoning" supports what the PTAB says would have been obvious: use a single speaker for Fujioka's caller identity announcements and for Gulick's caller voice.

Apple cites to testimony of Dr. Sprang that it says would support the PTAB's decision. Apple Br. 28, 29, 31-32. Apple concludes by saying that the PTAB "had every right to rely on Apple's evidence instead of ClassCo's." *Id.* 32. As already noted in sections I.D. and I.E., *supra*, the PTAB did not once refer to, much less rely on, any of Dr. Sprang's testimony (the only Apple evidence in the record), or even to any Apple argument, on this issue.

ClassCo does not assert that the <u>references</u> need to identify a specific reason why one of ordinary skill in the art would have made the changes to a Fujioka/Gulick combination required to yield the claimed invention. Apple Br. 45, referring to ClassCo Br. 39. What ClassCo said was that the "the proper approach <u>starts</u> from the disclosures in the references." ClassCo Br. 39 (emphasis supplied). Apple's reliance on "common sense" is also misplaced. *KSR* does not say that the common sense of a person of ordinary skill in the art can replace the need for "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *See Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010) ("[m]erely saying that an invention is a logical, commonsense solution to a problem does not make it so"); ClassCo Br. 41.

**B.    The Caller Announcement Apparatus with the Claimed Audio Announcing Circuit Solves a Problem Not Recognized by the Prior Art**

The '695 patent itself discusses numerous shortcomings in prior art caller ID apparatuses addressed by the claimed audio announcing circuit, such as the lack of a "caller ID apparatus that can serve all telephones on the premises as well as being used with cordless telephones and 'speaker' phones . . ." Col. 2, lines 28-30 (A24). These problems are solved by claim 2's unique audio announcing circuit that uses a telephone's caller voice speaker for announcing the caller's identity. This provides access to caller ID services throughout a home wherever a standard extension telephone is located—and even outside a home on a portable (cordless) telephone handset—without requiring costly special telephones or separate caller ID terminals. *See* ClassCo Br. 44-45, including citations to the record.

The PTAB and the examiner did not suggest *any* problem that would have been solved by using a single speaker for the function of producing caller voice and the function of caller identity announcements. The problem solved by a claimed invention is a part of *KSR*'s "expansive and flexible approach." 550 U.S. at 419-20 ("One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims"). The examiner's "problem" was how to make Fujioka into a speakerphone, but the

obvious solution to that problem is not encompassed by a caller announcement apparatus with the claimed audio announcing circuit. *See also Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346 (Fed. Cir. 2013); *In re Kotzab*, *supra*; ClassCo Br. 43.

ClassCo fully appreciates that *KSR* says that the prior art need not solve the same problem as the patentee. 550 U.S. at 420. But here there is no prior art addressing any problem in a way that would have led to the claimed announcement apparatus, nor has the PTAB, the examiner, or Apple pointed to any.

## III.   THE RECORD ESTABLISHES THE RELEVANCE OF THE PATENT OWNER'S OBJECTIVE EVIDENCE TO THE PATENTABILITY OF THE CLAIMED INVENTION

Various reasons were put forward by Apple as to why ClassCo's objective evidence of nonobviousness is not entitled to any weight. Apple cites to many places in the PTAB Decision, but frequently misstates what the PTAB actually said. This section takes up each item of objective evidence in turn and the lack of substantial evidence supporting the PTAB's refusal to give it weight. Here ClassCo summarizes the objective evidence already presented at greater length in ClassCo's opening brief, ClassCo Br. 16-26, but focuses on the content that establishes a nexus with the features of claims 2 and 14 relied on for patentability. This manner of parsing the objective evidence demonstrates that Apple is wrong that the objective evidence relates solely to a feature—simple caller identity announcing—

known from Fujioka, and is thus irrelevant under *Tokai Corp. v. Easton Enter. Inc.*,

632 F.3d 1358 (Fed. Cir. 2011). Apple Br. 56.

### Public and Industry Praise

| Evidence | Excerpt | PTAB Error |
|---|---|---|
| Teleconnect Magazine, Oct. 1995 (A1653-A1654)<br><br>Nexus to claim 2: caller identity announcements over the "inside line" refers to the caller voice speaker in telephone handset (the "audio announcing circuit"); recording (storing) 20 announcements (the "memory storage"). | The ability to hear identity information "over the inside line" (that is, the telephone handset) is a "feature [that] really adds utility [because] it frees you from being tied to the immediate proximity of the box, and lets the device serve multiple extensions (dispersed through an apartment, for example) and wireless phones"; "[u]p to 20 such announcements can be recorded . . . ." | PTAB (A11) ignores this discussion in the article and the explanation in 2nd Luneau Decl., para. 6 (A1816). |
| Computer Telephony July 1996 (A1825)<br><br>Nexus to claim 2: caller identity announcements "as soon as you pick up the phone" refers to caller voice speaker in telephone handset (the "audio announcing circuit"); recording (storing) 20 different numbers (the "memory storage"). | Calls ClassCo's product "one of the neatest standalone Caller ID boxes on the market," and notes its feature whereby "as soon as you pick up the phone it can play the name of the caller . . . ," referring to the handset telephone speaker. "You can record a voice message for up to 20 different numbers . . . ." | PTAB (A11) does not recognize that "as soon as you pick up the phone it can play the name of the caller" is a reference to using the voice speaker in the handset for producing identity information, and that recording 20 numbers refers to claim 2's memory storage. *See* 2nd Luneau Decl., para. 8. (A1816-A1817) |

| Evidence | Excerpt | PTAB Error |
|---|---|---|
| The Dallas Morning News (the Archive), Oct. 20, 1998 (A1829-A1830)<br><br>Nexus to claim 2: caller identity announcements "through the handset" refers to the caller voice speaker (the "audio announcing circuit"); store 64 numbers and introduce 20 of them by name or phrase (the "memory storage"). | Says ClassCo's CIDney product "works hard, [and] her price is right." Also calls "nifty features" the ability to announce callers on a cordless phone "through the handset" (i.e., the handset speaker) and the ability to store "the numbers for 64 incoming calls . . . and introduce 20 of them by name or phrase." | PTAB (A11-A12) does not recognize that announcing a caller "through the handset" and storing numbers are claimed features. See 2nd Luneau Decl., para. 8. (A1817) |
| Philips news release, Magnavox Introduces New Convenience Products For The Home, Apr. 4, 1995 (A1832-A1833)<br><br>Nexus to claim 2: caller identity announcements "deliver[ed] outside the house" refers to caller voice signal speaker in cordless telephone handset (the "audio announcing circuit"); "store up to 30 names . . . for voice announcing" (the "memory storage").<br><br>Nexus to claim 14: multiple phone numbers | The ClassCo CIT100's "unique configuration" enables users to "store up to 30 names available for voice announcing . . ." (claim 2's memory storage). "Users can also store multiple phone numbers for the same name). "The unit works with existing telephone sets, including cordless phones, which makes this the first product of its kind to deliver call-ID capability outside the house." | PTAB (A12) ignores statement (announcements delivered "outside the house") relating to cordless telephones; does not recognize that storing multiple numbers for the same name is a feature of claim 14. See 2nd Luneau Decl., para. 9. (A1817-A1818) |

| Evidence | Excerpt | PTAB Error |
|---|---|---|
| associated with same name. *See infra*, section IV. | | |
| Philips news release, <u>Hearing is Believing with Magnavox's Revolutionary Voice Announce[TM] Caller ID</u>, Jan. 5, 1996 (A1835-A1838)<br><br>Nexus to claim 2: caller identity announcements "no matter where you are in the house" refers to caller voice speaker in telephone handset (the "audio announcing circuit"); "stores up to 30 recorded names or numbers recording" (the "memory storage").<br><br>Nexus to claim 14: multiple phone numbers associated with same name. *See infra*, section IV. | Refers to "revolutionary Voice Announce[TM] Caller ID" product, made "even more user-friendly" by the "Voice Announce[TM] feature indicating who is on the phone no matter where the consumer is in the house," referring to using the phone's handset speaker for caller identity announcements. Says it "stores up to 30 recorded names or numbers [claim 2], and has the capability to associate a name with multiple telephone numbers." Praises its ability to "work[] with existing telephone sets, including cordless telephones, [thus] allowing the user to hear who's calling even from outside the home," referring to the claimed audio announcing circuit. "No other caller ID on the market allows this amount of flexibility." | PTAB (A13) does not recognize that says that allowing the user to hear who's calling from outside the house and storing 30 recorded names are claim 2 features, or that associating a name with multiple telephone numbers is a claim 14 feature. *See* 2nd Luneau Decl., para. 9. (A1818) |

**Customer Testimonials**

| Evidence | Excerpt | PTAB Error |
|---|---|---|
| Letter to David J. Luneau from Gary M. Weiss, M.D., dated Mar. 17, 1996 (A1656)<br><br>Nexus to claim 2's audio announcing circuit: caller identity announcements over cordless phone or "any phone in the house" refers to caller voice speaker in telephone handset; nexus to memory storage established in 2nd Luneau Decl., paras 3, 7. (A1815-A1816) | "Your voice-announced unit has revolutionized the call screening process. We can now hear the caller's name announced by the unit, as well as through the handset of our cordless phone (or any phone in the house no matter how far from the unit)." | PTAB does not mention this evidence. |
| E-mail to sales@classco.com from Mr. Blair Vickery, dated Mar. 26, 1997 (A1657)<br><br>Nexus to claim 2's audio announcing circuit: caller identity announcements over cordless handset" refers to caller voice speaker in telephone handset; storing prerecorded names (the "memory storage"). | "Being able to hear who's calling over the cordless handset, even when I'm already on the phone, is especially useful"; "The call waiting bleep is followed by the announcement of . . . the name if I've prerecorded . . . ." | PTAB does not mention this evidence. |

| Evidence | Excerpt | PTAB Error |
|---|---|---|
| Online review by Mr. Ken Hazenfield, Oct. 17, 2006 (A1661-A1662)<br><br>Nexus to claim 14: multiple phone numbers associated with same name. *See infra*, section IV; nexus to features in claim 1 established in 2nd Luneau Decl., paras 3, 7. (A1815-A1816) | "I can even match up several phone numbers for the same person (cell, home, work)." | PTAB does not mention this evidence. |
| Online review by Lewie C. Johnson, dated Jan. 21, 2010 (A1665)<br><br>Nexus to claim 2's audio announcing circuit: caller identity announcements "while you are already on the phone with someone" refers to the CALL Waiting state in which the caller's identity is announced over the handset of the telephone that is currently in use. *See* ClassCo Br. 7; nexus to memory storage established in 2nd Luneau Decl., paras 3, 7. (A1815-A1816) | "The best feature of this product is the caller I.D. option where it speaks the number while you are already on the phone with someone." | PTAB does not mention this evidence. |

## Commercial Success

There is also record evidence of commercial success attributable to the features of the claimed caller announcement apparatus. An example of the PTAB's unwarranted dismissal of this evidence, the PTAB Decision said that Mr. Luneau testified that "the market included [*sic*] 'total number of units capable of audible announcement based on Caller ID, but does not demonstrate that the claims recite the system as 'capable of audible announcement based on Caller ID.'" (A14) Of course, that is exactly what the claims do, but more to the point the PTAB ignored the rest of the testimony at the very place where it extracted its partial quotation, in which Mr. Luneau explicitly tied commercial success to the claimed audio announcing circuit:

> [O]f the [1,000,000 units] that included the capability to make audible announcements of stored, associated identity information, 200,000 had the claimed "audio announcing circuit operatively connected to the processing unit to receive identity information therefrom, the audio announcing circuit being operative to use the identity information to produce audio using the audio transducer [that also produces audio from caller voice signals]."

2nd Luneau Declaration, para. 12. (A1819) The PTAB also says that Fujioka provides "audible announcements based on Caller ID," which is beside the point, because the commercial success evidence is tied explicitly to the claim 2 audio announcing circuit with memory storage.

The record is devoid of substantial evidence justifying the PTAB's failure to find that ClassCo established a *prima facie* case of nexus with the claimed features relied on for patentability of claims 2 and 14. *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387 (Fed. Cir. 1988). ClassCo Br. 51-54. In contrast, the record created by ClassCo goes far beyond the minimum test for the adequacy of objective evidence, which "need only be 'reasonably commensurate with the scope of the claims . . . .'" *Rambus Inc. v. Rea*, 731 F.3d 1248, 1257 (Fed. Cir. 2013).

ClassCo argued the adequacy of its objective evidence as a matter of fact and of law at great length in its opening brief. ClassCo Br. 16-27, 51-56. The cases Apple cites, Apple Br. 53, do not restrict consideration by this Court of any of that evidence or argument. *CardSoft, LLC v. Verifone, Inc.*, 2015 U.S. App. LEXIS 20847 (Fed. Cir. Dec. 2, 2015), held that an appellee's argument had not been properly addressed in a responsive brief. 2015 U.S. App. LEXIS 20847, at *14. And in *Smith-Kline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006), the Court refused to consider an argument because it only had been vaguely alluded to in a footnote in the appellant's opening brief. *Id*. at 1320 ("This footnote is the only statement that even approaches a substantive argument on novelty in the entire Argument section of SmithKline's opening brief").

It is difficult to imagine a stronger nexus between the features relied on by ClassCo for patentability and the objective evidence. The only way a closer nexus would be possible is if the praise and testimonials quoted the exact claim language.

## IV.    THE PTAB'S ANALYSIS OF CLAIM 14 IS LEGALLY FLAWED BECAUSE OF THE PTAB'S FAILURE TO UNDERSTAND THE DIFFERENCE BETWEEN THE CLAIM TERMS "IDENTITY" AND "IDENTITY INFORMATION"

The PTAB erroneously contended that ClassCo's position is that Fujioka does not disclose identity information. (A9) That is directly contrary to what ClassCo said in its brief to the PTAB. (A1204) The PTAB then agreed with the examiner that Fujioka discloses identity information, as if that contradicts ClassCo's argument for the separate patentability of claim 14. ClassCo will try to unravel this tangled situation by expanding on its previous explanation of the difference between "identity information" and "identity" as used in the '695 patent claims, and at the same time addressing Apple's comments that add to the confusion. Apple Br. 46-51.

### A.    The Examiner Misconstrued the Claim Terms "Identity Information" and "Identity"

Claim construction is a matter of law unless it has "factual underpinnings," in which case the latter are reviewed as such. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, ___ U.S. ___, ___, 135 S. Ct. 831, 835 (2015). There is no dispute here as to any facts underlying the construction of claim 14. *See also In re Imes*, 778 F.3d

1250, 1252 n.1 (Fed. Cir. 2015) ("In this case, we review the Board's claim construction de novo.[1]" [Note 1. "Nothing in this case implicates the deference to fact findings contemplated by the recent decision in [*Teva Pharm. USA, Inc. v. Sandoz, Inc.*"]).

The misunderstanding is between the claim terms "identity information" and "identity." As ClassCo pointed out to the PTAB, identity is "an abstract notion associated in the mind of the called party with a caller station," such as the called party's mother (represented by one or more of her telephone numbers—"caller identification data" in the claims). (A1201) In contrast, identity information is "a tangible manifestation associated at the announcement apparatus with the caller identification data, retrieved from the memory using the caller identification data extracted from caller identification signals. This tangible, concrete representation of the caller station identity is used by the claimed audio announcing circuit to produce audio ('It's Mom')." *Id.*

The PTAB said that "Patent Owner does not explain sufficiently how the 'calling party's name,' for example, differs from the claimed 'identity information.' In both cases, the information indicates an 'identity' (e.g., a name)." (A9) But ClassCo explained to the PTAB that the calling party's name can be his or her "identity" in the '695 patent claims, but it cannot be "identity information." ClassCo also explained that "identity information" has to be tangible because

according to claim 1 it is "provided" by one physical component (a "processing unit") and used by another (the "audio announcing circuit"). ClassCo Br. 49; *See also* Patent Owner Appeal Brief, at 24-25. (A1220-A1221)

When the difference between "identity information" and "identity" is in hand, claim 14 is patentable for the reasons stated in ClassCo's opening brief. ClassCo Br. 50-51.

### B.    The PTAB Erred in Adopting the Examiner's Flawed Construction and Ignoring ClassCo's Argument Refuting It

The PTAB appeared to reject ClassCo's argument that identity information is "not an abstract concept," but then pointed to the fact Fujioka stores "names" in its memory. (A9) ClassCo agrees that Fujioka stores identity information. ClassCo Br. 48-49. But the PTAB's "name," to be capable of storage in a memory, has to be tangible. Claim 1 lays out how the abstraction would be the "identity" associated in the called party's mind with a telephone number (caller identification data), and how this caller identification data is associated in the claimed apparatus with "identity information."

Apple says that ClassCo argues that claim 14's identity information is stored in a memory. Apple Br. 47-49. In fact, the reference to a memory in ClassCo's Brief was a quote from the examiner. (A1107-A1108) ClassCo was not asserting that claim 14 includes has a memory for identity information, but that under established claim construction principles that term should be given the same

construction in claim 14 as in claim 2, which does have an identity information memory. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed. Cir. 2001); ClassCo Br. 50.

### CONCLUSION AND STATEMENT OF RELIEF SOUGHT

ClassCo has established that the PTAB erred as a matter of law by applying the *KSR* principle that "the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results," because that principle relates to "combination[s] which only unite[] old elements with no change in their respective functions." ClassCo's caller announcement apparatus includes an element, its audio announcing circuit, that performs a function not performed by any element in either prior art reference used by the PTAB to reject the '695 patent claims.

Even so, there is no legally sufficient evidence of record to support a finding that the PTAB's Fujioka/Gulick combination, with a single speaker replacing Fujioka's speaker 6 for announcing the caller's identity and Gulick's speaker 30 for caller voice, would have yielded predictable results. Nor did the PTAB cite to any Apple evidence of record on this point. Instead, the PTAB placed the burden on ClassCo to prove that the results would <u>not</u> have been predictable. (A8) *See*, *e.g.*, *M.P.E.P.* § 2143A (rejecting a claim under the rationale used by the PTAB

requires "a finding that one of ordinary skill in the art would have recognized that the results of the combination were predictable"); *see also* ClassCo Br. 42.

Further, neither the PTAB nor Apple advanced any other reason why ClassCo's claimed caller announcement apparatus would have been obvious. The PTAB failed in particular to put forward anything resembling the "explicit analysis" supported by "articulated reasoning" required by *KSR*.

On top of those flaws in the PTAB's obviousness analysis, it also erred by dismissing ClassCo's objective evidence of nonobviousness without substantial evidence to support its findings regarding lack of nexus.

Finally, the PTAB perpetuated the examiner's erroneous construction of claim 14, which confused the terms "identity" and "identity information." As a result, the PTAB erred in concluding that claim 14 would have been obvious.

For the foregoing reasons, ClassCo respectfully requests that the PTAB decision affirming the examiner's obviousness rejections of claims 2-5, 7, 9, 10, 14, 17, 18, 23, 26-30, and 34 be reversed.

Date: February 22, 2016   Respectfully submitted,

        /s/ David M. Quinlan
        David M. Quinlan
        DAVID M. QUINLAN, P.C.
        PO Box 8088
        22 Monterey Drive
        Princeton, NJ 08543
        Phone: (609) 921-8660
        Facsimile: (609) 921-8651

        *Attorney for Appellant ClassCo, Inc.*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 22nd day of February, 2016, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

| | |
|---|---|
| David L. Fehrman | Brian R. Matsui |
| Mehran Arjomand | MORRISON & FOERSTER LLP |
| Alex S. Yap | 2000 Pennsylvania Avenue, Suite 6000 |
| MORRISON & FOERSTER LLP | Washington, DC  20008 |
| 707 Wilshire Boulevard, Suite 6000 | (202) 887-8784 |
| Los Angeles, California  90017 | |
| (213) 892-5200 | |
| | |
| *Counsel for Appellee* | *Counsel for Appellee* |

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Reply Brief of Appellant will be

hand filed at the Office of the Clerk, United States Court of Appeals for the

Federal Circuit in accordance with the Federal Circuit Rules.

/s/ David M. Quinlan
*Counsel for Appellant*

FORM 19. Certificate of Compliance With Rule 32(a)

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☒ The brief contains  [*state the number of* ] 6903  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐ The brief uses a monospaced typeface and contains  [*state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the or typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒ The brief has been prepared in a proportionally spaced typeface using

[*state name and version of word processing program* ] MS Word 2010  in

[*state font size and name of type style* ] 14 pt. Times New Roman  , or

☐ The brief has been prepared in a monospaced typeface using

[*state name and version of word processing program* ] with

[*state number of characters per inch and name of type style*] .

/s/David M. Quinlan

(Signature of Attorney)

David M. Quinlan

(Name of Attorney)

Appellant ClassCo, Inc.

(State whether representing appellant, appellee, etc.)

February 22, 2016

(Date)

Reset Fields